**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4126

ARNOLD JACKSON,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-95-349-DKC)

Argued: June 5, 1997

Decided: September 3, 1997

Before WILKINSON, Chief Judge, and LUTTIG and
WILLIAMS, Circuit Judges.

_____

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Chief Judge Wilkinson and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Denise Charlotte Barrett, Assistant Federal Public
Defender, Baltimore, Maryland, for Appellant. Odessa Palmer Jack-
son, Assistant United States Attorney, Greenbelt, Maryland, for
Appellee. **ON BRIEF:** James K. Bredar, Federal Public Defender,
Baltimore, Maryland, for Appellant. Lynne A. Battaglia, United
States Attorney, Greenbelt, Maryland, for Appellee.

_____

**OPINION**

WILLIAMS, Circuit Judge:

A jury found Arnold Jackson guilty of possessing an unregistered firearm (a sawed-off shotgun) in violation of 26 U.S.C.A. § 5861(d) (West 1989), and of possessing the firearm despite a previous felony conviction in violation of 18 U.S.C.A. § 922(g)(1) (West Supp. 1997). The district court sentenced Jackson under the United States Sentencing Guidelines to 262 months imprisonment, to be followed by three years supervised release, and a $100 special assessment. Jackson appeals both of his convictions and his sentence. He argues that the district court erroneously admitted two hearsay statements into evidence, erroneously denied his Motion for Judgment of Acquittal on both counts due to the insufficiency of the Government's evidence, erroneously found that he stipulated to his prior felon status, see 18 U.S.C.A. § 922(g)(1), and failed to charge the jury on an essential element of possessing an unregistered firearm, see 26 U.S.C.A. § 5861(d). Finding no reversible error, we affirm Jackson's convictions and his sentence.

I.

On July 31, 1992, police officers were summoned to the home of Genavy Jackson, Jackson's mother, in response to a domestic disturbance call. When Ms. Jackson answered the door, she immediately informed Officer Michael D'Ovidio that Jackson had been threatening to shoot family members and that she wanted him removed from the premises. Once inside the home, Officer D'Ovidio observed Jackson and his sister engaged in a heated argument in the hallway of the first floor of the home. Officer D'Ovidio described Jackson as "very aggressive in his actions and his manners and his words." (J.A. at 20.) When the officers separated Jackson and his sister, Jackson began arguing with his mother. After breaking up that argument, the officers instructed Jackson to gather his personal belongings and leave the premises.

While Jackson gathered his belongings, Ms. Jackson informed the officers that Jackson had a gun, but that she had secured it upstairs. Minutes later, standing outside the home, Jackson asked the officers

2

if he could get his gun for protection while he was "on the street." (J.A. at 23.) The officers refused his request, and Jackson left the premises. Because they were afraid that Jackson would return to the home, get his gun, and carry out his threats to harm his family, the officers asked Ms. Jackson to retrieve the gun from upstairs and give it to them for safekeeping. Ms. Jackson complied and brought the officers a red and gray plastic bag that was tied at the end. Upon returning to the police station, Officer D'Ovidio opened the plastic bag and discovered a sawed-off shotgun approximately 18 inches in total length, and several shotgun shells. Realizing that the weapon had been illegally altered, Officer D'Ovidio returned to Ms. Jackson's home to locate Jackson. Unable to find Jackson that night, he transferred the case to the Bureau of Alcohol, Tobacco, & Firearms (ATF). Approximately three years later, in August 1995, Jackson was arrested.

Jackson proceeded to trial on an indictment charging him with possession of an unregistered weapon in violation of 26 U.S.C.A. § 5861(d), and with being a felon in possession of a firearm in violation of 18 U.S.C.A. § 922(g)(1).[1] A jury found Jackson guilty of both charges and the district court sentenced him to 262 months imprisonment, three years supervised release, and a $100 special assessment.

II.

Jackson first makes a sufficiency-of-the-evidence challenge to his conviction for possession of an unregistered firearm, see 26 U.S.C.A. § 5861(d), arguing that the Government failed to prove (1) that Jackson possessed the weapon; (2) that the weapon fit the statutory definition of "firearm," see 26 U.S.C.A. § 5845(a) (West 1989); and (3) that Jackson knew that the weapon he possessed had characteristics triggering the statutory duty to register it in the National Firearms Registration and Transfer Record, see Staples v. United States, 511 U.S. 600, 619 (1994) (holding that § 5861(d) requires proof that the defendant knew that his weapon had the characteristics of a "firearm" under the Act); see also United States v. Starkes, 32 F.3d 100 (4th Cir. 1994) (per curiam). Also, Jackson claims that the district court com-

_____

[1] Another count of the indictment, an additional felon-in-possession charge, was severed and ultimately dismissed.

mitted plain error in failing to instruct the jury that the Government had the burden of proving the third element of the offense, i.e., that Jackson knew that the firearm had the pertinent characteristics. See United States v. David, 83 F.3d 638, 648 (4th Cir. 1996) (noticing the district court's plain error in failing to instruct on an essential element of the crime because a jury conceivably could have determined that the Government had not proven that element).

When reviewing a sufficiency-of-the-evidence claim, we will sustain the jury's verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 1087 (1997). Viewing the record in the light most favorable to the Government, we conclude that there is substantial evidence from which a reasonable juror could find that Jackson possessed the firearm, that the firearm had the characteristics that brought it within the scope of the Act, and that Jackson had knowledge of these characteristics. Moreover, we conclude that the district court's failure to properly instruct the jury that the Government had the burden of proving that he knew the firearm had the statutory characteristics was not reversible error. Accordingly, we affirm the conviction.

A.

Jackson claims that the Government failed to present evidence from which a reasonable finder of fact could conclude that Jackson possessed the sawed-off shotgun while living in his mother's home. Because the Government does not contend that Jackson actually possessed the firearm, we must determine whether there is substantial evidence to support the jury's finding that Jackson constructively possessed the sawed-off shotgun. See United States v. Burgos, 94 F.3d 849, 873 (1996) (holding that possession of contraband may be actual or constructive). "Constructive possession may be proved by demonstrating `that the defendant exercised, or had the power to exercise, dominion and control over the item.'" Id. (quoting United States v. Rusher, 966 F.2d 868, 878 (4th Cir. 1992)). Constructive possession

4

may be proved by circumstantial as well as direct evidence. See Burgos, 94 F.3d at 873.

The Government presented the following evidence to show that Jackson had constructive possession of the firearm. First, Jackson's ex-wife, Callie Jackson, testified that Jackson owned a sawed-off shotgun in early 1992 and that he took it with him on May 19, 1992, when he left the marital home. Second, when the officers arrived at Jackson's mother's home on the night of July 31, Jackson's mother told Officer D'Ovidio that Jackson was threatening to shoot family members. Third, Ms. Jackson indicated that Jackson owned a firearm and that she had temporarily secured it upstairs. Fourth, Jackson admitted his ownership of the gun when he asked the officers if he could take it with him as he left the house on the night of July 31. And finally, the officers on the scene, believing that Jackson had control over the firearm, returned to the home and took possession of the shotgun because they feared that Jackson might return, obtain the shotgun, and carry out his threats. This evidence amply supports the jury's finding that Jackson constructively possessed the firearm on the night of July 31, 1992.

B.

Jackson next argues that the Government failed to present evidence that the sawed-off shotgun he possessed met the statutory definition of "firearm."[2] The National Firearms Act, see 26 U.S.C.A. §§ 5801-5872 (West 1989 & Supp. 1997), makes it "unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C.A. § 5861(d) (West 1989). The statute defines a "firearm" to include

_____

[2] At both the close of the Government's case and prior to the district court's instructions to the jury, Jackson made a Rule 29 Motion for Judgment of Acquittal on both counts. (J.A. at 114, 126.) Jackson did not specify the grounds upon which his motions, both denied by the district court, were based. Therefore, while we acknowledge that Jackson's sufficiency-of-the-evidence claims are preserved, see Fed. R. Crim. P. 29, we note that Jackson did not direct the district court's attention to this specific complaint at any time during his trial.

5

> (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machine-gun; (7) any silencer (as defined in subsection 921 of Title 18, United States Code); and (8) a destructive device.

26 U.S.C.A. § 5845(a) (West 1989). In his indictment, Jackson was charged with possessing "a Stevens 12-gauge, Model 9478, <u>sawed-off shotgun</u>, barrel length 12 5/16 inches, a firearm which was not registered to him in the National Firearms Registration and Transfer Record" in violation of 26 U.S.C.A. § 5861(d). (J.A. at 10 (emphasis added).) Accordingly, Jackson correctly states on appeal that "[t]o sustain a conviction. . ., the government had to prove that [he] possessed a `shotgun having a barrel or barrels of less than 18 inches in length[, <u>see</u> 26 U.S.C.A. § 5845(a)(1),]' or `a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length[, <u>see</u> 26 U.S.C.A. § 5845(a)(2)].'" (Appellant's Br. at 24.) We affirm the conviction, concluding that the Government presented substantial evidence, challenged neither at trial nor on appeal by Jackson, from which a reasonable juror could determine beyond a reasonable doubt that Jackson's weapon (1) was "made from a shotgun," and (2) was shorter than the dimensions provided in § 5845(a)(2), thereby satisfying the definition of a firearm in the National Firearms Act.

While conceding that the Government needed to prove, in addition to the weapon's length, only that the sawed-off shotgun was "made from a shotgun," Jackson inexplicably argues that his conviction must be reversed because the Government failed to present sufficient evidence "to establish that the weapon possessed the physical characteristics bringing it within the definition of a `shotgun' under the Act." (Appellant's Br. at 24.) The term "shotgun" is defined by the statute as

6

a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed shotgun shell.

26 U.S.C.A. § 5845(d). Specifically, Jackson argues that the Government presented insufficient evidence that the weapon he possessed (1) had a "smooth bore," and (2) was "intended to be fired from the shoulder."**3** See id.

Jackson's argument is wholly without merit. A defendant may be convicted under § 5861(d) if his unregistered weapon is any of a number of different types of weapons included within the definition of "firearm," i.e., "a shotgun,""a weapon made from a shotgun," "a rifle," "a weapon made from a rifle," "a machinegun," "a silencer," or "a destructive device." See 26 U.S.C.A. § 5845(a). Thus, the Government needs to prove only that the weapon possessed by a defendant fits into one of a number of types of firearms included within the definition of "firearm." In this case, as Jackson admits, the Government could prove Jackson's guilt by demonstrating that his weapon met the statutory definition of "firearm," either as a"shotgun" or "a weapon made from a shotgun." The evidence proved that Jackson possessed "a weapon made from a shotgun" as provided in§ 5845(a)(2).

At trial, the Government presented evidence through Officer

_____

**3** In its brief and at oral argument, the Government conceded that we should reverse Jackson's conviction under 26 U.S.C.A. § 5861(d) because it failed to introduce evidence that the sawed-off shotgun possessed by Jackson came within the statutory definition of "shotgun." (Appellee's Br. at 1 n.1.) Specifically, the Government admits that it did not present any evidence that the weapon contained a"smooth bore," see 26 U.S.C.A. § 5845(d) (West 1989). The Government's concession, however, does not preclude our review of the issue. See United States v. Stanfield, 109 F.3d 976, 984 n.5 (4th Cir. 1997) (refusing to reverse defendant's conviction despite Government's concession of error).

7

D'Ovidio; Jackson's ex-wife, Callie Jackson; and Agent Trainor of the Bureau of Alcohol, Tobacco & Firearms (ATF), that the firearm recovered in the Jackson home was of the type required to be registered. Officer D'Ovidio described the weapon as "a sawed-off shotgun." (J.A. at 26.) He testified that the "gun had been cut off at the barrel, the metal part, and also at the wooden part, the stock end. So it was smaller, probably . . . 18 inches in length total." (J.A. at 26.) He concluded that the firearm had been "illegally altered." (J.A. at 29.) Callie Jackson testified that while she and Jackson were living together, he brought a full-size shotgun into their home. (J.A. at 70-71.) She further testified, however, that after a time the shotgun, while still in Jackson's possession, became "sawed off" at both ends. (J.A. at 72.) ATF Agent Trainor testified that the firearm had originally been manufactured as "a Stevens shotgun, Model 9478[,] a 12-gauge single shot shotgun with a pop-up mechanism." (J.A. at 108.) Agent Trainor agreed that the weapon was now an operable "sawed-off shotgun." (J.A. at 108, 110.) Also, the firearm was admitted into evidence and available for the jury to view. (J.A. at 110.)

Jackson did not challenge at trial, and does not contest on appeal, Agent Trainor's conclusion that the firearm had originally been manufactured as a Stevens 12-gauge shotgun, or the testimony of Officer D'Ovidio, Callie Jackson, or Agent Trainor that the firearm was a "sawed-off shotgun." In fact, Jackson did not object to the district court's instructions to the jury that "[f]or purposes of this case, a firearm is defined as a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." (J.A. at 148.) Moreover, Jackson did not request an instruction requiring the jury to find that the sawed-off shotgun met the statutory definition of "shotgun" either before or after it was altered. In sum, Jackson has not, at trial or on appeal, disputed that the weapon at issue, before it was altered, was a "shotgun."

Viewing the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the jury's verdict, we conclude that there was sufficient evidence presented from which a jury could determine that the sawed-off shotgun possessed by Jackson was a "weapon made from a shotgun" and "had an overall length of less

8

than 26 inches," and therefore was a "firearm" under the Act.**4** <u>See United States v. Breeland</u>, 53 F.3d 100, 104-05 (5th Cir. 1995) (rejecting defendant's claim that Government's failure to show that his sawed-off shotgun was "intended to be fired from the shoulder" required reversal of § 5861(d) conviction when it was undisputed that, as originally manufactured, the sawed-off shotgun met the statutory definition of "shotgun"); <u>United States v. Cabral</u>, 475 F.2d 715, 720 (1st Cir. 1973) (same); <u>see also United States v. Bogers</u>, 635 F.2d 749, 751 (8th Cir. 1980) (rejecting defendant's argument that a "sawed-off shotgun" must meet the definition of "shotgun" as found in 26 U.S.C.A. § 5845(d) for a conviction under § 5861(d)).

C.

Jackson also challenges the Government's failure to present evidence from which the jury could adduce that Jackson knew that the

_____

**4** Moreover, even if we were to construe Jackson's argument on appeal as disputing that the weapon he possessed was originally a "shotgun" as that term is statutorily defined, we conclude that there is sufficient evidence from which a reasonable jury could infer that the sawed-off shotgun was an illegal alteration of "a weapon designed . . . and intended to be fired from the shoulder and designed . . . to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger." ATF Agent Trainor, a firearms expert, testified that the firearm was originally manufactured as a Stevens 12-gauge single shot shotgun. This description, from a firearms expert, unchallenged by Jackson, was sufficient to show that the firearm had been a "shotgun" for the purposes of 26 U.S.C.A. § 5845(d) (West 1989). Any argument that Agent Trainor's failure to explicitly note that the weapon, as manufactured, had a "smooth bore" or was intended to be fired from the shoulder demonstrates a fundamental misunderstanding of what a shotgun is: "A shotgun is a gun with a smooth bore: a bore that has not been rifled to impart spin to the projectile on its way out of the barrel." <u>United States v. Janik</u>, 723 F.2d 537, 549 (7th Cir. 1983) (rejecting defendant's contention that the Government's failure to present expert testimony that the sawed-off shotgun had a "smooth bore" required reversal of his § 5861(d) conviction); <u>see also Webster's II New Riverside University Dictionary</u> 1078 (1988) (defining "shotgun" as "a shoulder-held firearm that fires multiple pellets through a smooth bore").

9

firearm had the characteristics to bring it within the Act. A year prior to Jackson's trial, the Supreme Court held that to obtain a § 5861(d) conviction, the Government must "prove that [the defendant] knew of the features of his [weapon] that brought it within the scope of the Act." Staples v. United States, 511 U.S. 600, 619 (1994). We have interpreted the Supreme Court's decision in Staples to overrule Fourth Circuit precedent holding that proof of a defendant's knowledge of a weapon's salient characteristics under § 5861(d) is not required for a conviction. Consequently, pursuant to the Supreme Court's directive in Staples, we have added mens rea as an element of the offense. See United States v. Starkes, 32 F.3d 100 (4th Cir. 1994) (per curiam) (granting a new trial to defendant when the Government failed to present evidence to support a finding that defendant knew his sawed-off shotgun had characteristics that brought it within the scope of the Act).

When reviewing a sufficiency-of-the-evidence claim, circumstantial as well as direct evidence may be considered, and the Government is given "the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Viewing the evidence in the light most favorable to the Government, we hold that there was substantial evidence from which a reasonable jury could infer Jackson's knowledge of the characteristics of the firearm. See United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 1087 (1997). As previously noted, Jackson's ex-wife, Callie Jackson, testified that Jackson brought a full-size shotgun into their home in early 1992 and that it was later "sawed off" at both ends. She stated that the firearm was in Jackson's possession both before and after its alteration. Callie Jackson further identified the firearm recovered from Ms. Jackson's home on the night of July 31, 1992, as the same sawed-off shotgun Jackson kept in their home. The Government also presented the testimony of Officer D'Ovidio who testified that the sawed-off shotgun he recovered from Ms. Jackson's home was approximately 18 inches in total length, an obvious 8 inches shorter than that permitted under the statute. The evidence of Jackson's possession of the firearm, both before and after it was illegally altered, leads to the inescapable conclusion that Jackson knew that the firearm was "made from a shotgun" and had "an overall length of less than 26 inches." Indeed, Jackson failed to present evidence that he lacked knowledge

10

of the firearm's salient characteristics. Accordingly, we hold that a reasonable jury could readily infer from the testimony of Callie Jackson and Officer D'Ovidio that Jackson knew that he possessed a weapon with the pertinent features.

D.

Finally, we address Jackson's claim that the district court committed plain error when it failed to instruct the jury that the Government had the burden of proving that Jackson knew of the characteristics of his weapon that made it a "firearm" under the Act.**5** Following the presentation of evidence, the district court instructed the jury as follows:

> The second element which the Government must prove beyond a reasonable doubt with respect to Count 2 is that the defendant had knowledge that what he was possessing was a firearm.
>
> An act is done knowingly if it was done voluntarily and purposely and not because of mistake, accident, mere negligence or other innocent reason. I instruct you that the requirement of proving that the defendant acted knowingly, does not make it necessary for the [G]overnment to show that the defendant knew about the registration provisions of the law, or that he knew the firearm had physical characteristics that might make it subject to registration . In other words, the Government need not prove that the defendant knew he was breaking the law.

(J.A. at 149-50 (emphasis added).) Jackson neither requested that the district court instruct the jury that the Government was required to prove his knowledge of the weapon's features nor did Jackson contemporaneously object to the district court's instructions. Accordingly, we review his claim for plain error. See United States v. Cedelle, 89 F.3d 181, 184 (4th Cir. 1996) ("When a criminal appellant

_____

**5** Although the Government is required to prove that a defendant had knowledge of the characteristics of the weapon that brings it within the scope of the Act, the Government is not required to prove that a defendant knew that failure to register such a weapon is against the law.

11

asserts an error that occurred during proceedings before the district court, but that was forfeited through a failure to timely object, we may notice such error only if it is a `[p]lain error[ ] or defect[ ] affecting substantial rights.'" (quoting Fed. R. Crim. P. 52(b)) (alterations in original)). To establish plain error, Jackson must demonstrate that (1) the asserted defect in the trial was, in fact, error; (2) the error was plain; and (3) the error affected his substantial rights. See Fed. R. Crim. P. 52(b); see also United States v. Olano , 507 U.S. 725, 732 (1993). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 117 S. Ct. 1544, 1549 (1997) (internal quotation marks omitted).

Jackson satisfies the three-prong test of Olano . First, Jackson has demonstrated that the district court committed error. In Staples, the Supreme Court held that to obtain a conviction under§ 5861(d), the Government has to prove that a defendant has knowledge of the physical characteristics of his weapon that bring it within the scope of the Act. 114 S. Ct. at 1796. The district court's failure to instruct the jury in accordance with Staples, therefore, constitutes error. Second, the error must be plain. "An error is plain, at least, when the error is clear both at the time it occurred and at the time of appeal." Cedelle, 89 F.3d at 185; see also United States v. David, 83 F.3d 638, 642 (4th Cir. 1996). The Supreme Court decided Staples in May 1994 -- more than a year prior to Jackson's trial. Thus, the error was plain for purpose of Rule 52(b). Third, Jackson must show that the error affected his substantial rights. "[T]he failure to instruct on an element of the crime, where the jury never made the constitutionally required findings, . . . satisfies Olano's third prong." David, 83 F.3d at 647; see also United States v. Aramony, 88 F.3d 1369, 1387 (4th Cir. 1996) (holding that the district court's failure to instruct the jury on an essential element of the crime was not subject to harmless-error analysis), cert. denied, 117 S. Ct. 1842 (1997). Accordingly, the district court's failure to instruct the jury on the Government's burden of proving an essential element of the charged offense-- Jackson's knowledge -- affected Jackson's substantial rights because it is unclear whether the jury found that Jackson knew the pertinent features of his weapon that brought it within the statutory definition of "firearm."

12

Although plain error occurred, we may decline to exercise our discretion to notice the error. See Johnson, 117 S. Ct. at 1550; Cedelle, 89 F.3d at 186 (declining to notice error committed by the district court in failing to instruct the jury on an essential element of a crime). Before we may notice a forfeited error, we must "determine whether the forfeited error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Johnson , 117 S. Ct. at 1550 (internal quotations omitted); see id. (holding that the appellate court should decline to correct error unless failure to notice the error results in a "miscarriage of justice"). In Cedelle , we reasoned that "[c]entral to this inquiry is a determination of whether, based on the record in its entirety, the proceedings against the accused resulted in a fair and reliable determination of guilt." Cedelle, 89 F.3d at 186. In this case, declining to correct the error will not result in a miscarriage of justice, nor will declining to notice the error seriously affect the fairness, integrity, or public reputation of the judicial proceedings, because, as discussed in Part II.C., the proceedings resulted in a fair and reliable determination of Jackson's guilt. See Johnson , 117 S. Ct. at 1550 (declining to reverse where trial court failed to instruct jury on essential element of the crime because evidence of guilt was "overwhelming"); Cedelle, 89 F.3d at 186 (declining to reverse where trial court failed to instruct jury on essential element of the crime because evidence presented at trial "permit[ted] no other conclusion" but that defendant was guilty). The features of Jackson's weapon that brought it within the scope of the Act were obvious qualities, easily observable by even a layperson unfamilar with firearms. It is simply unfathomable that Jackson could have possessed this firearm and not have known that it met the statutory requisites. Accordingly, we decline to exercise our discretion to notice the district court's error and affirm Jackson's conviction.

III.

Next, we address Jackson's argument that the evidence presented at trial was insufficient to support his conviction under 18 U.S.C.A. § 922(g)(1) (West Supp. 1997). Jackson argues that the Government failed to show (1) that he possessed the sawed-off shotgun and (2) that he was a convicted felon at the time he allegedly possessed the unlawful firearm. We disagree and affirm the conviction. For the reasons cited in Part II.A., we conclude that the Government presented

13

ample evidence from which a reasonable jury could infer that Jackson constructively possessed the firearm. We therefore limit our discussion to Jackson's second assigned error, i.e. , the Government's failure of proof regarding Jackson's felon status.

Jackson contends that his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C.A. § 922(g)(1), must be reversed because the Government failed to present any evidence that Jackson was convicted of a felony on or before July 31, 1992, the date he possessed the sawed-off shotgun. Jackson does not argue that he was not a convicted felon at the time of the possession, only that the Government failed to meet its burden of proof on this essential element of the charged offense. We conclude that any error was invited by Jackson.

At the beginning of the trial, Jackson's counsel represented to the district court that Jackson agreed to stipulate that he was "a convicted felon." (J.A. at 11.) Jackson subsequently submitted proposed jury instructions to the district court which indicated that the parties stipulated to his status as a felon at the time of his possession of the firearm on July 31, 1992. At the close of the Government's case, however, the Assistant United States Attorney read the following stipulation to the jury:

> That Arnold Jackson, before his arrest for the offense for which he is on trial, had been convicted of a crime punishable by imprisonment for a term exceeding one year, and that defendant Arnold Jackson has not been pardoned for the above referenced conviction, nor has the conviction been expunged, nor ha[ve] his civil rights to possess a firearm been restored.

(J.A. at 112-13.) This statement erroneously recited the parties' stipulation because it showed only that Jackson was a felon at the time of his arrest, rather than that Jackson was a felon at the time of his possession of the firearm, which was almost three years earlier than his arrest.[6] Jackson, however, did not object to the inaccuracy of the stip-

_____

[6] On appeal, Jackson disputes the Government's assertion that prior to trial he stipulated that he was a convicted felon on July 31, 1992. We

14

ulation as conveyed to the jury. In his Motion for Judgment of Acquittal at the close of the Government's case, Jackson again failed to challenge the apparent failure of proof. Moreover, Jackson failed to object when the district court, adopting verbatim his proposed instructions, charged the jury

> that the parties have stipulated that the defendant was convicted of a crime in state court and that this crime is punishable by imprisonment for a term exceeding one year. <u>It has also been stipulated by the parties that this felony conviction occurred prior to the time that the defendant is alleged to have possessed the weapons charged in the indictment.</u>

> I instruct you, in this connection, that the prior conviction that is an element of the charges here, and is not disputed, is only to be considered by you for the fact that it exists and for nothing else. You are not to consider it for any other purpose. You are not to speculate what it was for. You may not consider the prior conviction in deciding whether the defendant was in knowing possession of the gun that is charged.

(J.A. at 144-45 (emphasis added).) Not until the jury returned a guilty verdict did Jackson, for the first time, specifically challenge the Government's alleged failure of proof on the issue of whether he was a felon at the time he possessed the firearm.[7]

_____

find Jackson's argument untenable in light of the jury instructions proposed by Jackson prior to trial. He requested that the district court instruct the jury that "the parties have stipulated that the defendant was convicted of a crime in state court and that this crime is punishable by imprisonment for a term exceeding one year [and] that his felony conviction occurred prior to the time that the defendant is alleged to have possessed the weapon charged in the indictment." (Def. Requested Jury Inst. No. 31.)

[7] As noted in n.2, <u>supra</u>, Jackson made Rule 29 Motions for Acquittal on both counts prior to jury's deliberations. (J.A. at 114, 126.) Jackson did not, however, specify the grounds upon which his motions were based until his third Motion for Judgment of Acquittal, made after the jury returned its guilty verdict.

15

The district court denied Jackson's motion, concluding that its instruction regarding Jackson's felon status, as submitted by Jackson himself, provided the jury with evidence from which it could have found the essential elements of the crime. Jackson argues that a jury instruction does not relieve the Government of its burden of proof on an essential element of the crime, even if the defendant stipulated to the existence of the element. See United States v. Muse, 83 F.3d 672, 679 (4th Cir.) (holding that "[w]hile a valid stipulation relieves the prosecution of the burden of producing any other evidence in order to establish the fact stipulated, it does not relieve the prosecution from the burden of proving every element of the crime beyond a reasonable doubt."), cert. denied, 117 S. Ct. 261 (1996) (internal quotation marks omitted); see also id. ("In other words, the district court may not remove the element from the jury's consideration, even though the defendant has stipulated to that element."). We conclude that the Government's error in proof, if any, was invited by Jackson. Accordingly, we affirm his conviction under 18 U.S.C.A. § 922(g)(1).**8**

_____

**8** In light of the United States Supreme Court's recent decision in Old Chief v. United States, 117 S. Ct. 644 (1997), we question the validity of our holding in United States v. Muse, 83 F.3d 672 (4th Cir.), cert. denied, 117 S. Ct. 261 (1996), that a stipulation does not constitute a waiver of the government's burden of proof in the limited circumstances of a defendant's felon status for purposes of a 18 U.S.C.A. § 922(g)(1) charge. In Old Chief, the Supreme Court held that if a defendant offers to stipulate to his status as a felon at the time of his alleged possession of a firearm in violation of 18 U.S.C.A. § 922(g)(1), the Government is barred from offering any other evidence to prove the prior conviction. See Old Chief, 117 S. Ct. at 655. The Court, rejecting the Government's contention that it "is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it," id. at 653, concluded that "[t]he most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions," id. at 655. As a result, the Supreme Court held that the district court abused its discretion when it admitted the defendant's record despite the availability of an admission. See id. The Court further acknowledged that there are other acceptable means of proof of a defendant's legal status besides a formal admission on the record. For example, a redacted record of con-

16

The "invited error" doctrine recognizes that"'a court cannot be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request.'" United States v. Herrera, 23 F.3d 74, 75 (4th Cir. 1994) (quoting Shields v. United States, 273 U.S. 583, 586 (1927)). Jackson invited any error when (1) Jackson's trial counsel affirmatively represented to the district court prior to trial that Jackson had agreed to a stipulation that he was a felon at the time of the alleged possession; (2) Jackson failed to object to the inaccuracy of the stipulation as presented by the Government at the close of its case; (3) Jackson never made any argument that the Government failed in its burden of proof in his subsequent Motion for Judgment of Acquittal at the close of the Government's case; (4) Jackson submitted the proper stipulation concerning his felon status to the district court as a requested jury instruction; and (5) Jackson failed to object to the district court's instruction to the jury that the parties had stipulated to Jackson's felon status at the time of the offense. By stipulating to his felon status, Jackson effectively prevented the Government from presenting any additional evidence of his prior convictions, thereby clearly benefitting from the stipulation. Cf. Old Chief, 117 S. Ct. 644 (reversing defendant's conviction and holding that the district court abused its discretion in allowing the Government to reject the defendant's stipulation as to his felon status and admitting evidence of the defendant's prior convictions). Although the Government presented the stipulation to the jury, the stipulation was a consensual agreement between the parties. Therefore, Jackson was obligated to correct any inaccuracies and place the proper stipulation before the jury. We will not reward his failure to do so. We find especially disturbing the admission by Jackson's appellate counsel at oral argument that Jackson's trial counsel was aware of the error prior to the district court's charge to the jury. We refuse to countenance such "trial tactics." Based on the foregoing, we

_____

viction, coupled with a jury instruction clarifying that the redacted judgment was enough to satisfy the status element, would be acceptable. See Old Chief, 117 S. Ct. at 655 n.10. Because we conclude that any error was invited, we need not address whether the necessary result of the holding of Old Chief is the elimination of the Government's burden of proof of a defendant's felon status in a § 922(g)(1) charge when the defendant has entered into a stipulation to that effect.

17

conclude that any error was invited by Jackson when he knowingly failed to object to the Government's inaccurate portrayal of the stipulation between Jackson and the Government.

IV.

In his final attack on his convictions, Jackson appeals the district court's admission of two hearsay statements made by his mother to Officer D'Ovidio when he arrived at her home on the night of July 31. At trial, Officer D'Ovidio testified that Ms. Jackson stated that Jackson "had been threatening members of the family [and] had threatened to shoot members of the family" (J.A. at 19), and "that Arnold Jackson had a gun in the house but she had it secured upstairs" (J.A. at 21). We give substantial deference to a district court's evidentiary rulings and will not disturb them absent a clear abuse of discretion. See United States v. ReBrook, 58 F.3d 961, 967 (4th Cir.), cert. denied, 116 S. Ct. 451 (1995). Finding no abuse of discretion, we affirm.

The district court allowed the first hearsay statement, that Jackson was threatening to shoot family members, into evidence under the present sense impression exception, see Fed. R. Evid. 803(1), and the excited utterance exception, see Fed. R. Evid. 803(2). A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2); see Morgan v. Foretich, 846 F.2d 941, 947 (4th Cir. 1988) (the Government must prove that the declarant had experienced a startling event and that the utterance was made while the declarant was still under the stress or the excitement of the event). The district court reasoned that Ms. Jackson, the declarant, was describing an event that was both ongoing and startling. We agree. Ms. Jackson blurted out to Officer D'Ovidio that Jackson was threatening to kill members of her family immediately upon the officer's arrival to the home. At that same time, Officer D'Ovidio observed Jackson engaged in a heated argument with his sister. Moreover, considering the seriousness of Jackson's threats, as evidenced by his mother's decision to seek police assistance, we cannot say that

18

the district court abused its discretion in concluding that Ms. Jackson's statement at that time was admissible either as a description of ongoing events or as an excited utterance made while under stress.

As to the second hearsay statement, that Jackson "had a gun," viewing all facts in the light most favorable to the Government, we can assume that her statement was made immediately after the officers separated her and Jackson after he assaulted her. Officer D'Ovidio reported that Jackson "became engaged in an argument with his mother. It was the same yelling. He was very aggressive in his actions and his manners and his words. Cursing. We separated he [sic] and his mother. . . . to de-escalate the situation." (J.A. at 20-21.) It was immediately after this altercation that Ms. Jackson spoke of the gun. We agree with the district court that "the event itself is an adequate foundation" for admission of the statement as an excited utterance. (J.A. at 22.)

V.

Finally, Jackson challenges his sentence. He argues that the Government's concession that it failed to present evidence that the firearm Jackson possessed violated 26 U.S.C.A. § 5861(d) (West 1989), requires reversal of his sentence. Because we conclude that Jackson's § 5861(d) conviction should be affirmed, and because Jackson raises no additional challenges to his sentence, we also affirm his sentence for the reasons articulated for the affirmance of his conviction. For the foregoing reasons, we affirm Jackson's conviction under 26 U.S.C.A. § 5861(d) (West 1989), and 18 U.S.C.A. § 922(g)(1) (West Supp. 1997), and his sentence.

AFFIRMED

19