# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PROJECT CONTROL SERVICES,
INCORPORATED,

*Plaintiff-Appellant,*

v.

WESTINGHOUSE SAVANNAH RIVER
COMPANY, INCORPORATED,

*Defendant-Appellee.*

⎫
⎪
⎪
⎪
⎪
⎬  No. 01-1352
⎪
⎪
⎪
⎪
⎭

Appeal from the United States District Court
for the District of South Carolina, at Aiken.
Cameron McGowan Currie, District Judge.
(CA-98-3738-1-22)

Argued: February 27, 2002

Decided: May 21, 2002

Before WIDENER and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Karl Frederick Dix, Jr., SMITH, CURRIE & HAN-
COCK, L.L.P., Atlanta, Georgia, for Appellant. Michael Anthony
Scardato, MCNAIR LAW FIRM, P.A., Charleston, South Carolina,
for Appellee. **ON BRIEF:** Robert L. Widener, MCNAIR LAW
FIRM, P.A., Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

The present diversity action stems from a dispute between two companies that had a contractor/subcontractor relationship, which relationship was based upon numerous subcontracts between them. Westinghouse Savannah River Company (WSRC) was the contractor, and Project Control Services, Inc. (PCS) was the subcontractor. Under the subcontracts at issue, PCS performed employee scheduling and cost-estimating services for WSRC in connection with WSRC's management and operation of the United States Department of Energy's Savannah River Site (SRS).

The subcontracts at issue provided that PCS would be paid for its services on an interim basis using provisional rates, but that the parties would negotiate final rates after an audit, performed by WSRC, of PCS's accounting books and records. Depending upon the results of the negotiations, the final amount due PCS under the subcontracts at issue would be adjusted up or down. The final rates depended in large part on numerous cost elements allegedly incurred by PCS in performing the subcontracts at issue, for example, the cost to PCS to rent office space and the cost to PCS to employ office personnel.

The primary basis of the dispute between WSRC and PCS was the level of cooperation that each party exhibited when the time came for WSRC to audit PCS's accounting books and records. Each party accuses the other of acting unreasonably during the audit process, which process was eventually completed by the Defense Contract Audit Agency (DCAA) due to the bad blood that had developed between the parties. Relevant to the present appeal, the DCAA audit did not resolve certain disputes between the parties regarding the appropriateness of the amounts of certain cost elements claimed by PCS. Moreover, PCS was not happy when WSRC refused to continue its contractor/subcontractor relationship with PCS at the expiration of the subcontracts at issue and hired some employees of PCS.

PCS ultimately brought the present diversity action against WSRC alleging numerous claims, including breach of subcontracts and intentional interference with economic relations. The district court granted summary judgment in favor of WSRC with respect to some of PCS's claims, granted WSRC's motion for judgment as a matter of law with respect to a portion of PCS's breach of subcontracts claim,[1] and allowed the remaining claims to go to the jury. Following a three-week trial, the jury returned a verdict fully in favor of WSRC.

Furthermore, in order to resolve still disputed cost elements that needed to be resolved before the parties could agree upon the amounts that WSRC still owed PCS under the subcontracts at issue, the parties agreed to allow the jury to answer special interrogatories (the Special Interrogatories) regarding these disputed cost elements in what amounted to an accounting exercise. Based upon the jury's answers to the Special Interrogatories, the parties agreed that the final amount due PCS under the subcontracts at issue was $252,840.29. Because the jury had been instructed, with the consent of the parties, that it could find that WSRC still owed PCS money under the subcontracts at issue without finding that WSRC had breached the subcontracts at issue and the jury found that WSRC had not breached the subcontracts at issue, the district court did not make the $252,840.29 amount part of the final judgment.

On appeal, PCS alleges numerous errors by the district court, including, not making the $252,840.29 amount part of the final judgment and not awarding PCS pre and postjudgment interest on that amount. For reasons that follow, we affirm the final judgment of the district court *in toto*.

I.

In 1989, WSRC and the United States Department of Energy entered into a contract whereby WSRC agreed to manage and operate SRS for the Department of Energy. WSRC and PCS in turn entered

---

[1]In this regard, the district court granted WSRC's motion for judgment as a matter of law to the extent that PCS contended that WSRC breached an alleged contractual duty under a particular subcontract to provide PCS with WSRC personnel for training.

into several subcontracts whereby PCS agreed to perform employee scheduling and cost-estimating services for WSRC in connection with WSRC's management and operation of SRS.

As previously explained, the subcontracts at issue in the present appeal provided that the final amounts that WSRC owed PCS would be determined through negotiations between the parties after a final audit by WSRC of PCS's accounting books and records. Also as previously explained, the DCAA ultimately completed the final audit of PCS's accounting books and records because of the bad blood that had developed between the parties. The parties never engaged in final negotiations to resolve the disputed cost elements. Moreover, as stated previously, PCS was not happy when WSRC decided not to continue its contractor/subcontractor relationship with PCS at the expiration of the subcontracts at issue and hired some employees of PCS.

The rancorous relationship between PCS and WSRC ultimately led PCS to file the present diversity action against WSRC in the United States District Court for the Southern District of Georgia. Before any substantive proceedings occurred, the action was transferred to the United States District Court for the District of South Carolina. PCS's complaint alleged the following claims under South Carolina law: (1) breach of third-party beneficiary contract[2]; (2) libel; (3) slander; (4) violations of the South Carolina Unfair Trade Practices Act (SCUTPA), S.C. Code Ann. §§ 39-5-10 to 39-5-160 (Law. Co-op. 1985 & Supp. 2001); (5) breach of contract accompanied by a fraudulent act; (6) breach of the implied duty of good faith and fair dealing; (7) intentional interference with economic relations; (8) intentional interference with prospective contractual relationships; and (9) breach of subcontracts. WSRC filed a single counterclaim alleging breach of subcontracts.

Following the conclusion of discovery, the district court granted WSRC's motion for summary judgment, Fed. R. Civ. P. 56, with respect to PCS's claims alleging breach of third-party beneficiary

---

[2]This claim involved what the parties refer to as "the Prime Contract," which is the contract between WSRC and the United States Department of Energy regarding WSRC's management and operation of SRS.

contract, libel, slander, violations of the SCUTPA, and breach of contract accompanied by a fraudulent act. The district court denied WSRC's motion for summary judgment with respect to PCS's remaining claims. The district court then scheduled the remaining claims for a jury trial.

At the close of PCS's evidence at trial, the district court granted WSRC's motion for judgment as a matter of law to the extent that PCS contended that WSRC breached an alleged contractual duty to provide PCS with WSRC personnel for training. The jury found against PCS with respect to its remaining claims alleging breach of the implied duty of good faith and fair dealing, intentional interference with economic relations, intentional interference with prospective contractual relationships, and breach of subcontracts.[3]

Furthermore, as previously stated, the parties agreed to allow the jury to answer the Special Interrogatories regarding the disputed cost elements. Based upon the jury's answers to the Special Interrogatories, the parties agreed that the final amount due PCS under the subcontracts at issue was $252,840.29. This amount was not made part of the final judgment because the jury had been instructed, with the consent of the parties, that: (1) its determinations of the disputed cost elements on the Special Interrogatories does not suggest that it should find for or against either party on any of the other claims that were the subject of the verdict forms;[4] and (2) the jury returned a verdict finding that WSRC had not breached the subcontracts at issue.

---

[3]On its own motion, the district court dismissed WSRC's counterclaim because WSRC had abandoned the claim at trial.

[4]In this regard, the district court specifically instructed the jury as follows:

> I want you to understand that your determination of these amounts on the Special Interrogatories does not suggest that you should find for or against either party on any of the other claims, that [are] the subject of the verdict forms. In other words, we have two things you are doing here today. One is you are resolving those unresolved audit issues and you are resolving that irrespective of fault on either side. Then once you have resolved that then you go to the question of whether or not [PCS] has proved

The district court subsequently entered its final judgment dismissing all claims against WSRC with prejudice. The judgment also provided that WSRC "shall recover of the plaintiff its costs of action." (J.A. 2167). The district court left the determination of WSRC's "costs of action" for a later time, and to this court's knowledge has not made such determination.[5] *Id.*

Following the district court's entry of final judgment in favor of WSRC, PCS moved for a new trial with respect to all claims that were before the jury (Rule 59(a) Motion). Fed. R. Civ. P. 59(a). PCS argued that a new trial should be conducted because the weight of the evidence and the jury's answers to the Special Interrogatories demonstrated liability on the part of WSRC. PCS also rested its Rule 59(a) Motion on allegations that the district court committed various evidentiary errors. The district court denied the motion *in toto*.

In another post-trial motion, PCS moved for modification of the final judgment to reflect: (1) that it prevailed on WSRC's counterclaim; (2) an award of costs in favor of PCS rather than WSRC; and (3) an award of $252,840.29 plus pre and postjudgment interest on that amount. Fed. R. Civ. P. 59(e). The district court denied this motion (the Rule 59(e) Motion) *in toto* as well.

PCS noted a timely appeal. On appeal, PCS challenges the district court's grant of summary judgment in favor of WSRC with respect to its claims alleging breach of third-party beneficiary contract, violations of the South Carolina Unfair Trade Practices Act, and breach of contract accompanied by a fraudulent act. PCS also challenges the

---

the claims that it has brought in the case for breach of contract, breach of implied duty of good faith and fair dealing, and the tortious interference claims. But just because you are determining the amounts that are due and owing under the subcontracts does not imply that you should find for or against either party on those other claims. Those are separate issues.

(J.A. 2074-75).

[5]The parties agree that WSRC has paid PCS $252,840.29 less $30,000 that WSRC is withholding pending the district court's determination of its petition for approval of costs.

district court's grant of judgment as a matter of law with respect to the portion of its breach of subcontracts claim pertaining to WSRC's alleged duty to provide PCS with WSRC personnel for training. Moreover, PCS challenges the district court's denial of its Rule 59(a) Motion and Rule 59(e) Motion.

## II.

We first address PCS's contention that the district court erred by granting summary judgment in favor of WSRC with respect to its claim alleging violations by WSRC of the SCUTPA. PCS's contention is without merit.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "We review a grant of summary judgment *de novo*, applying the same standard as the district court." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874 (4th Cir. 1992). In so doing, we view all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

The crux of PCS's claim under the SCUTPA is that WSRC allegedly violated the SCUTPA by hiring PCS employees away from PCS, using audit information for improper purposes, and blacklisting PCS from future subcontracting opportunities with WSRC. To maintain a viable claim under the SCUTPA, a plaintiff must prove by a preponderance of the evidence "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998). South Carolina courts, in addressing the third element of a SCUTPA claim, have examined whether the conduct complained of is capable of repetition. *Noack Enters, Inc. v. Country Corner Interiors*, 351 S.E.2d 347, 350-51 (S.C. Ct. App. 1986).

We agree with the district court that PCS's SCUTPA claim fails for lack of evidence of an adverse impact on any public interest. As the district court aptly stated with regard to this element:

> Plaintiff hangs its hat on the "potential for repetition." It submits that WSRC has numerous subcontractors on site and continues to illegally perform financial audits on small and disadvantaged subcontractors. No evidence supports this claim. This case presents a situation in which two corporations found themselves involved in a business dispute over a contract audit. There is no evidence in the record that WSRC regularly has such disputes with other parties or that what transpired in this case has any real potential for repetition. At best this is a standard contract dispute that falls well outside the ambit of what constitutes an actionable SCUTPA violation. Accordingly, summary judgment is proper as to Count V.

(J.A. 607). Based upon this reasoning of the district court, we affirm the district court's grant of summary judgment in favor of WSRC with respect to PCS's SCUTPA claim.

### III.

We next address PCS's contention that the district court erred in excluding evidence that WSRC's auditors who were involved in the initial audit of PCS's accounting books and records were not licensed certified public accountants. PCS sought to introduce this evidence to show that WSRC did not attempt to perform audits of PCS's accounting books and records in accordance with statements "in its audit reports that they were prepared in accordance with Generally Accepted Government Auditing Standards ('GAGAS')." (PCS's Br. at 14). In this regard, PCS relied upon the portion of GAGAS providing that "public accountants engaged to conduct audits should be . . . licensed certified public accountants . . . ." (J.A. 1507).

WSRC had filed a pretrial motion *in limine* seeking to exclude all evidence from trial that GAGAS required auditors to be licensed certified public accountants. The district court granted WSRC's motion *in limine* on the basis that the subcontracts at issue did not require

WSRC's auditors to be licensed certified public accountants. The district court also rejected PCS's reading of the auditor licensing provision in the GAGAS. Essentially, the district court's reasoning in this regard went as follows. WSRC's auditors were not "public accountants engaged" to audit PCS. *Id.* Rather, they were WSRC employees exercising WSRC's contractual rights to inspect PCS's accounting books and records. Therefore, the licensing provision in GAGAS upon which PCS relies was not applicable to WSRC's auditors.

We review a district court's evidentiary rulings for abuse of discretion. *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 126 (4th Cir. 1995). We can find no fault in the reasoning of the district court. Therefore, we hold the district court did not abuse its discretion in excluding evidence that the auditors from WSRC involved in the initial audits of PCS's accounting books and records were not licensed certified public accountants.

IV.

We next address the assignment of error that PCS pressed most vigorously on appeal, namely, that the district court abused its discretion by denying its Rule 59(e) Motion to modify the judgment in order to reflect: (1) an award of $252,840.29 in its favor plus pre and postjudgment interest on that amount; and (2) an award of costs in its favor rather than WSRC. Fed. R. Civ. P. 59(e). PCS argues that such a modification is in order because, in its complaint: (1) it alleged that WSRC was using its failure to properly perform and complete the audit of PCS's accounting books and records as an excuse for not paying it substantial sums of money owed under the subcontracts at issue; (2) it generally requested an award of monetary damages; and (3) it specifically requested an award of prejudgment interest for amounts still owing under the subcontracts. According to PCS, it is inconceivable that the jury could have answered the Special Interrogatories in its favor but found against it on every one of its substantive claims. Thus, as PCS's argument goes, the final judgment, as it now stands, reflects an inconsistency in the jury's verdict; an inconsistency that can only be corrected by vacating the final judgment and remanding the case to the district court with instructions that the district court grant its Rule 59(e) Motion.

Although Rule 59(e) does not itself provide a standard under which a district court may grant a motion to alter or amend a judgment, we have previously recognized that there are three grounds for modifying an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997). PCS's Rule 59(e) Motion appears to rely upon this last ground.

Reviewing the district court's denial of PCS's Rule 59(e) Motion for abuse of discretion, *id.*, we find this assignment of error to be without merit. First, the invited error doctrine prevents PCS from relying upon any alleged inconsistency in the jury's verdict in support of its challenge to the district court's denial of its Rule 59(e) Motion. Under the "invited error" doctrine, a party is prevented from inducing the court to take an erroneous step and later seeking redress for the error. *United States v. Jackson*, 124 F.3d 607, 617 (4th Cir. 1997) ("invited error doctrine recognizes that a court cannot be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request") (internal quotation marks omitted). Here, PCS invited the jury's allegedly inconsistent verdict. As the district court reported in its Memorandum Opinion in which it denied PCS's Rule 59(a) Motion and its Rule 59(e) Motion, "both parties agreed that even if there was no breach [of the subcontracts at issue] by WSRC, outstanding negotiations were required . . . to finalize any amounts due to or from" PCS under the subcontracts at issue. (J.A. 2192). Therefore, with input from and approval of the parties, the district court instructed the jury as follows:

> [Y]our determination of these amounts on the Special Inter-rogatories does not suggest that you should find for or against either party on any of the other claims, that [are] the subject of the verdict forms. In other words, we have two things you are doing here today. One is you are resolving those unresolved audit issues and you are resolving that irre-spective of fault on either side. Then once you have resolved that then you go to the question of whether or not [PCS] has proved the claims that it has brought in the case for breach of contract, breach of implied duty of good faith and fair dealing, and the tortious interference claims. But just

> because you are determining the amounts that are due and owing under the subcontracts does not imply that you should find for or against either party on those other claims. Those are separate issues.

(J.A. 2074-75). These jury instructions clearly created the potential for the verdict situation that resulted in this case.[6] Thus, assuming *arguendo* that the jury's verdict is inconsistent, such inconsistency was invited by PCS and cannot now be remedied on appeal. Second, as the district court correctly explained, the verdict is not inherently inconsistent. The jury apparently believed that although WSRC owed PCS money under the subcontracts at issue, that fact did not constitute breach of those subcontracts under the circumstances. This finding is plausible given that the subcontracts at issue provided that outstanding negotiations were required to finalize any amounts owed PCS.

PCS's assignment of error in this regard strikes us as PCS wanting to have its cake and eat it to. The district court accommodated PCS's desire to have the jury resolve the disputed cost elements by answering the Special Interrogatories. In order to effectuate this process, PCS also agreed to the jury instruction which made clear that the jury's answers to the Special Interrogatories had no bearing upon its deliberations regarding PCS's substantive claims. PCS now complains that the district court erred by not incorporating the $252,840.29 amount as well as pre and postjudgment interest on that amount as part of the final judgment (not to mention its request that we award it rather than WSRC costs). We think not; PCS having made its bed, it must now lie in it. In sum, we affirm the district court's denial of PCS's Rule 59(e).[7]

---

[6]Notably, even before this court, PCS expressly states that it "does not attack the jury charges themselves." (PCS's Reply Br. at 11). In fact, PCS admits that the jury instruction quoted above "is not inaccurate." (PCS's Reply Br. at 9).

[7]We have carefully reviewed PCS's remaining assignments of error and find them to be without merit.

## V.

In conclusion, we affirm the district court's final judgment *in toto*.

*AFFIRMED*