**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 95-5579

JACQUES ROGER CEDELLE,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-95-40)

Argued: May 9, 1996

Decided: July 11, 1996

Before RUSSELL, ERVIN, and WILKINS, Circuit Judges.

_____

Affirmed by published opinion. Judge Wilkins wrote the opinion, in
which Judge Russell and Judge Ervin joined.

_____

**COUNSEL**

**ARGUED:** John Joseph O'Donnell, Jr., Alexandria, Virginia, for
Appellant. Kathleen Marie Kahoe, Assistant United States Attorney,
Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey,
United States Attorney, Alexandria, Virginia, for Appellee.

_____

**OPINION**

WILKINS, Circuit Judge:

Jacques Roger Cedelle appeals his conviction of one count of knowingly receiving visual depictions of a person under the age of 18 engaged in sexually explicit conduct. See 18 U.S.C.A. §§ 2252(a)(2), 2256(1) (West Supp. 1996). He principally argues that the district court committed plain error by failing to instruct the jury that the Government had the burden of proving that he knew that the visual depictions he received portrayed minors engaged in sexually explicit conduct. See United States v. X-Citement Video, Inc., 115 S. Ct. 464, 472 (1994). We affirm.

I.

As part of an ongoing investigation to identify individuals who buy, sell, and trade materials depicting child pornography, undercover postal inspectors placed an advertisement in an adult magazine offering "taboo" material for sale.**1** Shortly thereafter, a letter was received from Cedelle, who identified himself with the alias Roger Carlisle and requested "any video VHS of young [g]irls." J.A. 160.**2** After the inspectors inquired by mail as to his specific interests, Cedelle stated a desire to obtain "some video VHS of young girls about 11-15 [years old] more or less in any type of sexual activities." J.A. 162. And, in reply to a letter from the inspectors indicating the availability of materials involving minors, Cedelle asserted that he was"very interested[;] 12 [years old] or younger [was] nice" if it showed the minors engaged in not merely fellatio but also copulation. J.A. 165. Finally, after a third letter was sent by the undercover officers indicating that a videotape and some photographs that met his expressed interests were available for $50.00, Cedelle ordered the materials, enclosing a money order for the prescribed amount.

_____

**1** "Taboo" is a word commonly used to describe child pornography by individuals interested in buying, selling, or trading such material. See United States v. Moore, 916 F.2d 1131, 1137 (6th Cir. 1990).
**2** Cedelle stipulated that the letters mailed to the undercover postal inspectors and signed Roger Carlisle were, in fact, written by him.

2

Due to the nature of the pornographic materials, the inspectors determined that a controlled delivery to the mailbox address given for Roger Carlisle would be preferable in order to preclude possible further distribution of the items. Consequently, they sealed the videotape and pictures in an envelope addressed to Roger Carlisle, attached a return address label and proper postage, and delivered the package to the correct address. Thereafter, the inspectors maintained undercover surveillance of the location, and within a short time, Cedelle arrived, picked up the parcel, and drove away. The inspectors arrested him after executing a traffic stop and, during a subsequent search of the vehicle, recovered the package containing the pornographic materials. Following the arrest, the officers searched Cedelle's residence pursuant to a search warrant.

During trial, Cedelle stipulated that the videotape and photographs contained in the package delivered to him depicted persons under the age of 18 engaged in sexually explicit conduct in violation of 18 U.S.C.A. § 2252(a)(2). Importantly, he did not stipulate that at the time he received the package, he knew that the materials depicted minors. Following the presentation of the evidence, the district court charged the jury in pertinent part:

> The first element is one that the defendant Jacques Cedelle knowingly received visual depictions and specifically a videotape and photographs. That's the first element.
>
> The second element is that the visual depictions were received through the mail. Now, I have already actually resolved that one for you. As a matter of law in this case, I have ruled that whatever was received in that priority mailing had to be received through the mail.
>
> And, the third element has actually been resolved for you by the stipulation. The third element is that the visual depictions were produced using minors engaging in sexually explicit conduct, and that the visual depictions were of such conduct.
>
> . . . .

3

> So really what you only have to focus your attention on
> is the first element which again is that the defendant,
> Jacques Cedelle, knowingly received visual depictions, that
> is, a videotape and photographs.

J.A. 145-46. After setting forth the elements of the offense, the district court instructed the jury:

> [T]he [G]overnment need only show that the defendant,
> Jacques Cedelle, was aware of the general nature and char-
> acter of the materials involved in these photographs and vid-
> eotapes. It is not required that the defendant actually know
> the material was illegal. That's not an element that the
> [G]overnment has to actually prove.

J.A. 147. At no time did Cedelle request that the district court specifically instruct the jury that the Government was required to prove that he knew that the items he received in the package were visual depictions of minors engaged in sexually explicit acts, nor did he object to its failure to do so. At the close of its deliberations, the jury returned a verdict of guilty.

## II.

When a criminal appellant asserts an error that occurred during proceedings before the district court, but that was forfeited through a failure to timely object, we may notice such error only if it is a "[p]lain error[ ] or defect[ ] affecting substantial rights." Fed. R. Crim. P. 52(b); see United States v. Olano, 507 U.S. 725, 731-32 (1993). As interpreted by the Supreme Court, Rule 52(b) contains three elements that must be established before we possess the authority to notice an error not preserved by a timely objection: The asserted defect in the trial proceedings must, in fact, be error; the error must be plain; and, it must affect the substantial rights of the defendant. Olano, 507 U.S. at 732. But, because the correction of all such errors would eviscerate the requirement that a defendant make a contemporaneous objection to errors committed during trial, we must also evaluate the forfeited error to determine whether we should exercise our discretion to notice it even when the three predicate showings required by Rule 52(b) are made. See id. at 735-37; see also United States v. Young, 470 U.S. 1,

4

15 (1985). To guide our determination of this ultimate question, the Supreme Court has instructed that we should not notice a forfeited error under Rule 52(b) unless a miscarriage of justice would result-- i.e., the defendant is actually innocent--or the error "`seriously affect-t[s] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." Olano, 507 U.S. at 736-37 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).

A.

The first showing required by Rule 52(b) is that an error must have occurred in the proceedings below. In United States v. X-Citement Video, Inc., 115 S. Ct. 464 (1994), the Supreme Court held that in order to obtain a conviction under § 2252(a)(2), the Government is required to prove not only that a defendant knowingly received, dis-tributed, or reproduced for distribution a visual depiction, but also that the defendant knew both that it portrayed a person under the age of 18 and that the minor was engaged in sexually explicit conduct. Id. at 472. The district court below failed to properly instruct the jury that the Government was required to prove that Cedelle knew that the materials depicted a person under the age of 18 engaged in sexually explicit conduct. Thus, without question, error within the meaning of Rule 52(b) occurred.

B.

Second, it is necessary that the error that occurred during the trial be plain. An error is plain, at least, when the error is clear both at the time it occurred and at the time of appeal. See United States v. David, 83 F.3d 638, 642 (4th Cir. 1996). Because X-Citement Video, which was decided on November 29, 1994, clarified the Government's bur-den of proof under § 2252(a)(2) well before Cedelle's trial on April 5, 1995, the error in the instructions given to the jury was clear at the time of trial and, obviously, remains so on appeal. We therefore con-clude that the error in the jury instructions is plain for purposes of Rule 52(b).

C.

Third, it must also be shown that the error affected Cedelle's sub-stantial rights. As we recently recognized, "the failure to instruct on

5

an element of the crime, where the jury never made the constitutionally required findings, . . . satisfies Olano 's third prong." David, 83 F.3d at 647. By not giving proper instructions regarding the Government's burden to prove that Cedelle knew that one of the persons involved in the sexually explicit conduct was a minor, the district court failed to submit all of the essential elements of § 2252(a)(2) to the jury. See X-Citement Video, 115 S. Ct. at 472. Consequently, the error affected Cedelle's substantial rights because it is unclear whether the jury determined that Cedelle knew that the materials he received involved depictions of minors engaged in sexually explicit conduct. See David, 83 F.3d at 647.

D.

When the first three requirements of Rule 52(b) are established, we must consider whether the circumstances present an appropriate occasion for the exercise of our discretion to notice the error. See Olano, 507 U.S. at 735-36; David, 83 F.3d at 647-48 (declining to adopt per se rule that error of failing to instruct the jury on an essential element of the crime must be noticed as plain error).**3** We make this determination not by viewing the error in isolation, but rather "by viewing [it] against the entire record," recognizing that Rule 52(b) carefully balances the goal of encouraging defendants to seek an accurate and fair trial in the first instance--a goal advanced by the contemporaneous-objection rule--against a recognition that a true miscarriage of justice or a defect calling into question the fairness, integrity, or public reputation of the judiciary must not be allowed. Young, 470 U.S. at 15-16. Accordingly, only if in the context of the proceedings taken as a whole, the error either led to the conviction of a defendant who is actually innocent or otherwise "`seriously affect[ed] the fairness,

_____

**3** Our decision in United States v. Rogers, 18 F.3d 265 (4th Cir. 1994), is not to the contrary. Although Rogers could be read to hold that reversal is required whenever a district court fails to instruct the jury on an essential element of an offense, the Supreme Court plainly has instructed that the determination of whether to exercise our discretion to notice plain errors must be made on a case-by-case basis. Young, 470 U.S. at 16 n.14; see also David, 83 F.3d at 647-48. Thus, after considering the circumstances presented, the Rogers court decided to exercise its discretion to notice the error and reverse Rogers' conviction.

integrity or public reputation of judicial proceedings'" should we exercise our discretion pursuant to Rule 52(b) to notice it. See Olano, 507 U.S. at 735-37 (quoting Atkinson, 297 U.S. at 160). Central to this inquiry is a determination of whether, based on the record in its entirety, the proceedings against the accused resulted in a fair and reliable determination of guilt.[4] Cf. Strickland v. Washington, 466 U.S. 668, 687 (1984) ("[A] fair trial [is] a trial whose result is reliable."); Wade v. Hunter, 336 U.S. 684, 689 (1949) (recognizing "public[ ] interest in fair trials designed to end in just judgments").

Based on these considerations, we decline to notice the error committed by the district court in failing to instruct the jury that the Government had the burden of proving that Cedelle knew that the materials depicted persons under the age of 18 engaged in sexually explicit conduct. A failure to correct the error will not result in a miscarriage of justice or seriously affect the fairness, integrity, or public reputation of the judiciary because, viewing the record as a whole, the proceedings resulted in a fair and reliable determination of Cedelle's guilt. See United States v. Randazzo, 80 F.3d 623, 631-32 (1st Cir. 1996) (declining to reverse on the basis of an error in failing to instruct the jury on an essential element of the offense because the evidence of guilt was overwhelming); United States v. Jobe, 77 F.3d 1461, 1476 (5th Cir. 1996) (same and noting that the defendant did not challenge the sufficiency of the evidence); United States v. Ross, 77 F.3d 1525, 1540-41 (7th Cir. 1996) (same). The letters Cedelle mailed to the postal inspectors permit no other conclusion but that he knew that the visual depictions portrayed persons under the age of 18 engaged in sexually explicit conduct. Indeed, Cedelle has never argued that he did not, and he points to no evidence that could even arguably support a conclusion that he did not. Cf. David, 83 F.3d at 648 (noticing plain error of the district court in failing to instruct on an essential element of the crime because a jury conceivably could have determined that the Government had not proven that element). Consequently, even if the proper instruction had been given, Cedel-

_____

**4** We recognize that circumstances may exist where the proceedings contain an error that seriously affects the fairness, integrity, or public reputation of the judiciary even though the record demonstrates that the defendant is guilty. See Olano, 507 U.S. at 736-37. That situation is not presented here.

7

le's conviction was inevitable. Under these circumstances, to expend the judicial resources necessary for a retrial would be more detrimental to the fairness, integrity, and public reputation of judicial proceedings than permitting Cedelle's conviction to stand. See Ross, 77 F.3d at 1540-41 (relying on significant waste of judicial resources that would be engendered by retrial in declining to notice plain error). Accordingly, we decline to exercise our discretion to notice the error that occurred during the proceedings below.

III.

We have considered the other arguments Cedelle raised, including his claim that the search of the home was improper because it lacked probable cause and because it was based upon an anticipatory search warrant, see United States v. Goodwin, 854 F.2d 33, 36 (4th Cir. 1988), all of which we determine are without merit. **5** We therefore affirm Cedelle's conviction for violating § 2252(a)(2).

AFFIRMED

_____

**5** We observe that the district court also failed to permit the jury to consider whether the package delivered to Cedelle at his mailbox during a controlled delivery was received through the mail for purposes of § 2252(a)(2). See United States v. Gaudin , 115 S. Ct. 2310, 2313-14 (1995) (criminal convictions must rest upon a jury determination that the defendant is guilty beyond a reasonable doubt of the essential elements of the crime). But, because counsel for Cedelle expressly stated during oral argument that this issue had been abandoned on appeal, we deem it waived. See Olano, 507 U.S. at 733.

8