**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4380

MICHAEL DELANEY ROBERTS,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-96-291-WMN)

Submitted: February 10, 1998

Decided: April 2, 1998

Before WILLIAMS and MICHAEL, Circuit Judges, and HALL,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Gil S. Amaral, WALKER, VAN BAVEL, AMARAL & MEAD,
P.A., Baltimore, Maryland; Janis R. Harvey, Esquire, LAW OFFICES
OF JANIS R. HARVEY, P.A., Baltimore, Maryland, for Appellant.
Lynne A. Battaglia, United States Attorney, John F. Purcell, Jr.,
Assistant United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Michael D. Roberts appeals his convictions and sentences on one count of possession of marijuana with intent to distribute (18 U.S.C. § 841(a) (1994)) and one count of possession of a firearm by a convicted felon (18 U.S.C.A. § 922(g)(1) (West 1976 & Supp. 1997)). He was sentenced to 235 months' imprisonment. Roberts contends the trial court erred in denying his motion to suppress evidence seized at his home and in granting the Government's motions to suppress certain testimony. Roberts also contends that the court's jury instruction concerning the firearm offense deprived him of his Fourteenth Amendment right to equal protection under the law. Finding no error, we affirm.

In February 1996, during the course of investigating a string of commercial burglaries, Detective Corporal John E. Superson of the Howard County Police Department applied for and received a search and seizure warrant for Roberts's residence at 1208 Thompson Street. Roberts shared the residence with his girlfriend, Lisa Fletcher. The purpose of the warrant was to seize evidence of burglary tools and other such equipment and clothing involved in the burglaries.

During the search of Roberts's home, police seized a .22 caliber rifle, rounds of ammunition, and marijuana, including twenty-two live marijuana plants. Defense counsel unsuccessfully sought to suppress the evidence seized on the basis that the affidavit in support of the warrant did not establish a link between the criminal activity and Roberts's residence.

We review de novo the legal question of whether a search warrant and its supporting affidavit are legally sufficient and accord substantial deference to a neutral and detached judge's judgment. See United States v. Oloyede, 982 F.2d 133, 138 (4th Cir. 1992). We must simply

2

insure the judge had a substantial basis for concluding probable cause existed. See Illinois v. Gates, 462 U.S. 213, 238 (1983). The judge's task is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. In making our assessment, we consider the totality of the circumstances, including whether, from the affidavit, the judge could assess the informant's reliability and his basis of knowledge and could evaluate the degree of the officer's corroboration of the informant's tip. Id.; see also United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993).

Superson submitted a detailed ten-page affidavit in support of his request for a search warrant. According to Superson, two confidential informants provided him information linking Roberts and his residence to a series of commercial burglaries. One informant named four men, including Roberts, involved in a string of commercial burglaries. One of the men named was Roberts's brother, Larry Roberts. The informant described in detail how the burglaries were undertaken. He described a scenario in which the burglars would disable telephone and alarm systems, forcibly enter the building, and pry open any safes or remove the safes they were unable to open. The burglars wore gloves, hoods, and masks during the burglaries. The details provided by the informant were consistent with what Superson knew of the burglaries. According to the informant, safes removed from commercial establishment were taken to 8131 2nd Street, Larry Roberts's home address, to be pried open. The safes were later dumped in a creek behind the home or in another creek. The informant also described an occasion when Roberts and the other burglars requested help from a man named Jan to unload a safe from a truck. Jan worked in a junkyard next to the 2nd Street address.

Superson corroborated much of the information provided by the informant. He verified names and addresses. He also interviewed Jan, who recalled unloading a safe, but could not recall Roberts being present at the time. He did, however, recall Roberts visiting the 2nd Street address. He gave Superson Roberts's phone number. Superson entered the 2nd Street property, which was abandoned, and found a set of welding and oxygen tanks and other tools. Superson recovered

3

safes in the creeks described by the informant. The safes were later found to be stolen from commercial establishments.

Superson also learned through police reports that one of the men named by the informant had a prior arrest for a commercial burglary. At his arrest, he had keys to a Ford Escort belonging to Fletcher. Police found pry bars, a splitting axe, and brown gloves in the Escort.

Another informant did not name Roberts as one of the burglars; however, he did provide the other names provided by the prior informant. In addition, he told Superson that the three men were seen in a Camaro with license plate number CTX-216. A records search revealed Fletcher owned that vehicle. (JA at 13-19).

On appeal, Roberts contends Superson's affidavit did not contain sufficient information to link the burglaries to Roberts's home. In Lalor, we recognized "[i]n this and other circuits, residential searches have been upheld only where some information links the criminal activity to the defendant's residence . . . . Where no evidence connects the drug activity to the residence, the courts have found the warrant defective." Lalor, 996 F.2d at 1583.

Superson's affidavit gave no indication of the informants' reliability or basis for knowledge. In issuing the warrant, a magistrate must look at the totality of the circumstances and an informant's reliability and basis for knowledge are "no longer independent requirements." Lalor, 996 F.2d at 1581; see also United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). Any information provided by an informant may establish probable cause if the information is sufficiently corroborated. See United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991).

In this instance, we find that Superson sufficiently corroborated the information provided by the informants. Superson verified names and addresses, located the safes as directed, found equipment that could be used to open safes at an address provided by one of the informants, discovered one of the names provided had a prior arrest for burglary, and corroborated in part the incident with Jan at the junkyard. Corroboration of some of the details is often sufficient because "an informant [who] is right about some things . . . [is] more probably right about other facts." Gates, 462 U.S. at 244. Even corroboration of innocent

4

details tends to indicate other portions of the informant's information are correct. See Lalor, 996 F.2d at 1581. Probable cause is established if a man of reasonable caution would believe evidence of a crime would be located at the particular location. It does not need to be shown that the belief is correct or more likely true than false. See United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992).

We also find there was a connection between the criminal activity and Roberts's residence because it was reasonable to presume that the instrumentalities of the criminal activity--in this instance, burglary tools and clothing--would be stored in the residence. See United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988). Superson's affidavit described an on-going criminal enterprise. The instrumentalities were not likely to have been disposed of. In addition, Roberts was directly linked to the criminal activity by one of the informants. Furthermore, one of Fletcher's cars had been observed at the scene of a burglary and contained burglary tools. Accordingly, the judge's finding of probable cause was appropriate.

In any event, the search was valid under the good faith exception to the warrant requirement. Under the good faith exception, evidence obtained from a defective search warrant will not be suppressed unless one of the following situations is present: (1) the officers were dishonest or reckless in preparing their affidavit; (2) the judge acted as a "rubber stamp" for the officers; (3) the judge did not have a substantial basis for determining the existence of probable cause; or (4) the officers could not have harbored an objectively reasonable belief in the existence of probable cause. See United States v. Leon, 468 U.S. 897, 926 (1984).

On appeal, Roberts contends Superson could not have had an objectively reasonable belief in the existence of probable cause. The Supreme Court outlined four situations in which such a belief would be unreasonable: (1) the judge was misled by information in the affidavit the officer "knew was false or would have known was false except for his reckless disregard of the truth"; (2) the judge "wholly abandoned his judicial role"; (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) "depending on the circumstances of the particular case, a warrant may be so facially deficient . . . that the

5

officers cannot reasonably presume it to be valid." Id. at 923 (citations and quotations omitted). None of the situations exist in the instant appeal. There is no indication Superson believed the information to be false or that the judge abandoned his judicial role. Nor was the affidavit lacking in probable cause or the warrant facially deficient.

At trial, the court granted the Government's motion in limine seeking to preclude defense counsel's substantive use of Fletcher's state court conviction for possession of marijuana recovered during the search if Fletcher did not testify and if the purpose of introducing the evidence was to establish Roberts's innocence. Roberts contends he was denied his Sixth Amendment right to present witnesses on his behalf and to question those witnesses in open court. We review decisions regarding the admission of evidence for abuse of discretion. See United States v. Whittington, 26 F.3d 456, 465 (4th Cir. 1994).

Roberts mischaracterizes the effect of the court's grant of the Government's motion. Roberts was not prevented from having Fletcher testify and take blame for the marijuana. He was only prevented from presenting evidence of Fletcher's conviction in lieu of her testimony. Roberts does not state how Fletcher's guilty plea bears on his guilt or innocence. A nontestifying co-defendant's guilty plea should not be mentioned at trial whenever possible. See United States v. Blevins, 960 F.2d 1252, 1260 (4th Cir. 1992). The introduction of such evidence may prevent the jury from making an "individual assessment" of the remaining defendant's guilt. Id. Accordingly, we find the court did not abuse its discretion.

Likewise, the court did not abuse its discretion in precluding testimony from Roberts's sister regarding his possession of the firearm. It is unlawful for any person who has been convicted of a crime punishable by a term of imprisonment exceeding one year to possess any firearm affecting interstate commerce. See 18 U.S.C. § 922(g)(1). According to Roberts, his sister would testify that the rifle was a family heirloom he received when he was eight years old. Roberts contends he could only be guilty of the firearm offense if he was a convicted felon prior to receiving possession of the rifle. This argument is without merit. Unlawful possession of a firearm under § 922(g) requires either a showing of actual possession or proof of constructive or joint possession at the time the defendant stands con-

6

victed of a crime punishable by more than a year. See United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992). Roberts stipulated at trial that due to his prior convictions, he was a person prohibited from possessing a firearm under § 922(g). Roberts's sister would only testify as to when Roberts came into possession of the rifle. Her testimony was irrelevant with regard to his possession of the firearm on the day his home was searched.

The court instructed the jury that it was permitted to find the rifle traveled in interstate commerce from the fact that the firearm was manufactured in Connecticut and located in Roberts's possession in Maryland. Roberts contends the instruction violated the Equal Protection Clause of the Fourteenth Amendment because it created a class of convicted felons who could not violate the statute, i.e. convicted felons found possessing the firearm in the state it was manufactured.

As a technical matter, Roberts's equal protection argument should have been raised under the Fifth Amendment. See International Science & Tech. Inst., Inc. v. Inacom Communications, Inc., 106 F.3d 1146, 1156 (4th Cir. 1997). Furthermore, this argument was not raised in the court below, and we therefore review this issue for plain error. See United States v. Cedelle, 89 F.3d 181, 184 (4th Cir. 1996).

We find no error. Evidence that a firearm was manufactured in one state and possessed by the defendant in another state is sufficient to establish the interstate commerce element of § 922(g)(1). See United States v. Crump, 120 F.3d 462, 466 (4th Cir. 1997). The court's instruction in this instance conformed to the evidence and did not create a separate class of felons. Furthermore, the statute is not dependent on where the firearm was manufactured. The interstate commerce element can be established if it is shown the firearm traveled through interstate commerce at any time prior to or during the defendant's possession. See United States v. Chesney, 86 F.3d 564, 570-71 (6th Cir. 1996), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3826 (U.S. June 16, 1997) (No. 96-9027). Since there was no error, it follows there was no plain error. See Cedelle, 89 F.3d at 185.

Accordingly, we affirm Roberts's convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

7