**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 03-7204**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DAVID HUNTER MAUNEY, III,

Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Middle
District of North Carolina, at Durham.  William L. Osteen, District
Judge.  (CR-97-251; CA-97-251-1-1)

─────────────

Argued: March 16, 2005                  Decided: April 20, 2005

─────────────

Before LUTTIG, WILLIAMS, and GREGORY, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

**ARGUED:** William King Hoyt, Winston-Salem, North Carolina, for
Appellant.  Douglas Cannon, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina,
for Appellee.  **ON BRIEF:** Anna Mills Wagoner, United States
Attorney, Robert M. Hamilton, Assistant United States Attorney,
Greensboro, North Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

David Mauney appeals from the denial of his 28 U.S.C.A. § 2255 (West Supp. 2004) motion, which alleged that his appellate counsel rendered constitutionally ineffective assistance by failing to argue that an intervening Supreme Court decision rendered the indictment and jury instructions in his case defective. Because Mauney was not prejudiced by the alleged failing of his appellate counsel, we affirm.

I.

The underlying criminal charges against Mauney arose out of his employment as the head of cotton and yarn purchasing for Sara Lee Knit Products, Inc. (Sara Lee). As part of his responsibilities, Mauney was charged with procuring cotton from Sara Lee's vendors at the price most advantageous to Sara Lee. Unbeknownst to Sara Lee, Mauney received at least $285,759, more than double his annual salary, from these vendors between October 11, 1992 and August 8, 1994.[1]

Sara Lee required all of its executives to file annual disclosure statements to help Sara Lee identify and address conflicts of interest. On his disclosure form, Mauney represented

---

[1]The evidence presented at sentencing supported the district court's finding that Mauney actually received more than $1,000,000 in kickbacks during his tenure as the head of cotton purchasing for Sara Lee. Nonetheless, the indictment alleged that Mauney received $285,759 in kickbacks.

that he had received no payments in excess of two hundred dollars from any of Sara Lee's suppliers, and he disavowed having any interest in or being affiliated with "any vendor, purchaser or competitor" of Sara Lee.(J.A. at 75.)

On October 27, 1997, Mauney was indicted for mail fraud in violation of 18 U.S.C.A. §§ 1341, 1346 (West 2000 & Supp. 2004), wire fraud in violation of 18 U.S.C.A. §§ 1343, 1346 (West 2000 & Supp. 2004), money laundering in violation of 18 U.S.C.A. § 1957 (West 2000),[2] and conspiracy to commit fraud and money laundering in violation of 18 U.S.C.A. § 371 (West 2000). The indictment alleged that Mauney had perpetrated a scheme to defraud Sara Lee of its money, property and its right to the honest services of Mauney by virtue of his misrepresentations on Sara Lee's disclosure form. The indictment did not allege, however, that Mauney's misrepresentations were material.

At his trial, Mauney did not deny that he received large payments from Sara Lee's vendors, but testified that the payments were "consulting fees" for services that he provided to the vendors on nights and weekends. Mauney argued that the evidence showed that he had no intent to defraud Sara Lee when he made his false disclosure statements because the payments he received did not harm Sara Lee. Instead, Mauney argued, he had always procured cotton at

---

[2]Mauney used several shell corporations and straw men so that his activities would remain undetected.

3

the lowest possible price and had made millions of dollars in profits for Sara Lee.  In contrast, the Government argued that, as the indictment alleged, Mauney had forced vendors to pay him kickbacks as a quid pro quo for the award of cotton contracts.

The district court instructed the jury, in part, as follows:

> [A] scheme to defraud includes any scheme to deprive another of money, property, or of the intangible right to honest services by means of false or fraudulent pretenses, representations or promises.
> A representation may be false when it constitutes a half truth, or effectively conceals a material fact, provided it is made with intent to defraud.

(J.A. at 563.)  The jury convicted Mauney on all counts on July 24, 1998. On May 21, 1999, the district court sentenced Mauney to seventy-eight months of imprisonment. The district court entered its judgment of conviction on June 10, 1999.

On that same day, the Supreme Court issued its opinion in Neder v. United States, 527 U.S. 1, 25 (1999), which held that materiality is an element of the federal crimes of mail, wire and bank fraud.  Id. at 25.  Prior to Neder, the Government was not required to prove materiality as an element of mail and wire fraud in this circuit.  See, e.g., United States v. ReBrook, 58 F.3d 961, 966 (4th Cir. 1995).

Believing that Neder significantly raised his chances of prevailing on appeal, Mauney notified his attorney of the decision. Despite this notification, Mauney's counsel failed to read Neder before filing his opening brief on appeal.  Indeed, Mauney's

4

counsel did not raise <u>Neder</u> in a written filing with this court until he filed a motion to file a rehearing petition out of time, after we had already affirmed Mauney's conviction and sentence.

Mauney then filed a § 2255 motion, alleging, <u>inter alia</u>, that his attorney rendered constitutionally ineffective assistance by failing to argue on appeal that Mauney's indictment and jury instructions were defective in light of <u>Neder</u>. After holding an evidentiary hearing, a magistrate judge recommended that the district court deny Mauney's motion. The district court adopted the magistrate judge's report and recommendation. We granted Mauney a certificate of appealability, and we have jurisdiction under 28 U.S.C.A. § 2253 (West Supp. 2004). When reviewing a district court's judgment on a § 2255 motion, we review factual findings for clear error and legal conclusions de novo. <u>United States v. Cheek</u>, 94 F.3d 136, 140 (4th Cir. 1996).

II.

To establish a claim for ineffective assistance of counsel, a defendant must show, first, that his counsel's performance was deficient and, second, that the deficiency prejudiced him. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Under <u>Strickland</u>'s "performance" prong, the defendant must demonstrate that his counsel's performance "fell below an objective standard of reasonableness" determined by comparison to "prevailing

5

professional norms." Id. at 688. In addition, the defendant must show under Strickland's "prejudice" prong that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. If the defendant conclusively fails to demonstrate sufficient prejudice from certain acts or omissions, the court need not decide whether counsel's performance was, in fact, deficient under Strickland. See id. at 697.

The only claim Mauney raises in this appeal is that his appellate counsel was ineffective for failing to argue that his indictment and jury instructions were defective under Neder. Thus, Mauney must show that his appellate counsel's failure to raise Neder was objectively unreasonable[3] and that, but for his counsel's deficient performance, there is a reasonable probability that his appeal would have succeeded. Because Mauney did not object to either the jury instructions or his indictment in the district court, Mauney must show that there is a reasonable probability that, had his attorney made those challenges on appeal, we would have found reversible plain error.

Under plain error review, which is authorized by Fed.R.Crim.P. 52(b) (West Supp. 2004), federal appellate courts have only "a

_____

[3]Because we conclude that Mauney has conclusively failed to show that he was prejudiced by his counsel's alleged failing, we need not decide whether Mauney's counsel was objectively unreasonable when he failed to raise Neder on direct appeal. See Strickland v. Washington, 466 U.S. 668, 694 (1984).

6

limited power to correct errors that were forfeited because [they were] not timely raised in [the] district court." United States v. Olano, 507 U.S. 725, 731 (1993) (citing Fed.R.Crim.P. 52(b)). An appellate court may not correct an error the defendant failed to raise in the district court unless there is: "(1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Cotton, 535 U.S. 625, 631 (2002) (internal quotation marks omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotation marks omitted).

An indictment that fails to charge an element of the offense of conviction does not seriously affect the fairness, integrity, or public reputation of judicial proceedings if there is "overwhelming" and "essentially uncontroverted" evidence of the missing element. Id. at 633 (quoting Johnson v. United States, 520 U.S. 461, 470 (1997)). Similarly, when the district court fails to charge the jury on an element of the offense of conviction, we will not notice the error if the evidence would "permit no other conclusion" and the defendant's conviction "was inevitable" under the correct jury instruction. United States v. Cedelle, 89 F.3d 181, 186 (4th Cir. 1996); see Johnson, 520 U.S. at 470.

7

To determine whether Mauney was prejudiced by his appellate counsel's failure, we first must determine whether the challenged indictment and jury instructions were plainly erroneous. In Neder, the Supreme Court held that "materiality is an element of the federal mail fraud, wire fraud, and bank fraud statutes." 527 U.S. at 4. Thus, to be guilty of federal mail fraud, wire fraud, or bank fraud, a defendant must have "misrepresent[ed] or conceal[ed] [a] *material* fact." Id. at 22. A fact is material "if it has a natural tendency to influence or is capable of influencing" the intended victim. Id. at 16 (alteration and internal quotation marks omitted).

In this case, Mauney was alleged to have falsely represented to Sara Lee that he was not receiving payments from Sara Lee's vendors as part of his scheme to defraud Sara Lee. Thus, under Neder, Mauney could not be found guilty of mail fraud or wire fraud unless the fact that he was receiving substantial payments from Sara Lee's cotton vendors was material. Accordingly, the district court's failure to instruct the jury on materiality and the indictment's failure to allege materiality were plain errors.[4]

---

[4]Of course, given the state of the law at the time of Mauney's trial, we do not fault the district court or trial counsel for failing to recognize these errors. Nonetheless, because Neder issued while Mauney's case was still pending on direct review, we would have applied it in Mauney's case. See Griffith v. Kentucky, 479 U.S. 314 (1987); Johnson v. United States, 520 U.S. 461, 468 (1997) (holding that if "law at the time of trial was settled and clearly contrary to the law at the time of appeal" a district court ruling contrary to the law at the time of appeal is a plain error).

8

Nonetheless, if the evidence of the materiality of Mauney's misrepresentation was "overwhelming" and "essentially uncontroverted," we would not have noticed the plain errors in Mauney's indictment and jury instructions on direct appeal, because the errors would not have "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Cotton, 535 U.S. at 632-33; Cedelle, 89 F.3d at 186. Thus, if it was absolutely clear from the record that Sara Lee was "capable of [being] influenc[ed]," Neder, 527 U.S. at 16, by Mauney's misrepresentation, we would have affirmed Mauney's conviction. Cotton, 535 U.S. at 633; Johnson, 520 U.S. at 470.

We think it beyond serious dispute that a company is capable of being influenced by knowledge of the fact that its purchasing agent is receiving large kickbacks from suppliers. In such a situation, the company would naturally suspect that it would be getting a lower price absent the kickbacks. Certainly, any rational employer that discovers that an employee in charge of purchasing is earning more money from kickbacks than from his salary will have a "natural tendency" to put someone else in charge of purchasing and investigate the employee's conflict of interest. Given that Mauney admitted to receiving over a quarter of a million dollars in payments from Sara Lee's vendors, we conclude that the evidence of the materiality of his misrepresentation was "overwhelming" and "essentially uncontroverted." Cotton, 535 U.S.

9

at 631. Accordingly, we would not have noticed the defect in Mauney's indictment had his attorney raised it on direct appeal, because the defect did not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." Id. at 632-33. Similarly, we would not have noticed the defect in Mauney's jury instructions[5] because the evidence would "permit no other conclusion" than that the kickbacks were material, and Mauney's conviction "was inevitable" under proper jury instructions. Cedelle, 89 F.3d at 186. Accordingly, Mauney was not prejudiced by his counsel's failure to challenge the indictment and jury instructions under Neder on direct appeal, and the district court properly denied Mauney's § 2255 motion.

As the kickbacks in this case were undisputedly large, Mauney could not credibly argue that the payments he received involved immaterial sums that were incapable of influencing Sara Lee's decision to retain him and continue entering into contracts tainted by his conflicts of interest. Recognizing this weakness in his

---

[5]The Government argues that Mauney's jury instructions were not defective because the district court charged the jury that "[a] representation may be false when it constitutes a half truth, or effectively conceals a material fact." (J.A. at 563 (emphasis added).) Considering the instructions as a whole, however, it is clear that the jury could have convicted Mauney if it found any of the following: (1) Mauney had "effectively conceal[ed] a material fact"; (2) Mauney had made a half-true representation; or (3) Mauney had made any other "false or fraudulent pretenses, representations or promises." (J.A. at 563.) Accordingly, Mauney's jury instructions did not require the jury to find that any false representations related to a material fact, as is mandated by Neder.

10

position, Mauney instead argues that the absence of a materiality instruction prejudiced him by allowing the jury to convict him solely on the basis of his breach of Sara Lee's conflict-of-interest policy and without finding that the kickbacks harmed Sara Lee economically. Because of the absence of a materiality instruction, Mauney's argument goes, the jury could expansively interpret the deprivation of honest services to include any and all violations of company policy. This argument misinterprets the change in law wrought by Neder and its application in Mauney's case.

Under the district court's instructions, to convict Mauney of mail and wire fraud, the jury needed to conclude that Mauney intentionally devised a scheme to defraud Sara Lee, and that Mauney used the mails and interstate wires for the purpose of executing the scheme. The court also instructed the jury that a "scheme to defraud" was one that sought to "deprive another of money, property, or of the intangible right to honest services by means of false or fraudulent pretenses, representations or promises." (J.A. at 563.) Thus, the jury's guilty verdict necessarily included the following findings: (1) Mauney intentionally devised a scheme; (2) Mauney's scheme sought to deprive Sara Lee of money, property, or of the intangible right to honest services; and (3) the scheme utilized false or fraudulent pretenses, representations or promises to accomplish the deprivation. The false representation charged in

11

the indictment was Mauney's statement that he was not receiving payments from Sara Lee's vendors. The only additional finding necessary under Neder was that the fact Mauney misrepresented, i.e. his receipt of the kickbacks, was material to the deprivation that his scheme sought to accomplish.

In other words, the jury found that Mauney intended to deprive Sara Lee of money, property or honest services. To that end, Mauney devised a scheme that relied, in part, on his false representation that he was not receiving payments from Sara Lee's vendors. So long as Sara Lee's decision whether to part with money, property, or honest services might have been different if Sara Lee had known that Mauney was receiving kickbacks, the fact that Mauney misrepresented was material. Thus, Mauney's assertion that the jury could have convicted him solely on the basis of his breach of Sara Lee's conflict of interest policy does not relate to the materiality of his misrepresentation, but instead it relates to what the jury could have found constituted a deprivation as the object of his scheme. Accordingly, even if Mauney were correct that the jury could have convicted him based solely on his violation of Sara Lee's conflict of interest policy, he is mistaken that this result obtains from the district court's failure to charge materiality.

In essence, Mauney's prejudice argument is nothing more than a lamentation that the district court failed to define "honest

12

services" more precisely in its charge to the jury.[6] But <u>Neder</u> did not even discuss the meaning of "honest services" as used in 18 U.S.C.A. § 1346, let alone restrict its meaning in the way Mauney advocates. Thus, even if counsel had appealed the district court's failure to charge the jury that Mauney's misrepresentation had to be material under <u>Neder</u>, we would not have had occasion to consider whether the district court should have defined honest services more precisely in its jury instructions. Accordingly, the "prejudice" that Mauney complains of did not result from the deficient performance he challenges, <u>i.e.</u>, his attorney's failure to appeal the lack of a materiality instruction under <u>Neder</u>. Because, as we noted above, knowledge of the fact that Mauney was receiving kickbacks unquestionably was "capable of influencing" Sara Lee's decision to part with its money, property, or intangible right to honest services, we would have affirmed Mauney's conviction and sentence even if Mauney had raised <u>Neder</u> on direct appeal. Because

---

[6]Although Mauney alleged in his 28 U.S.C.A. § 2255 (West Supp. 2004) motion that his attorney was ineffective for failing to object to the district court's failure to instruct the jury that an employee deprives his employer of honest services only when he "breach[es] a fiduciary duty, and . . . foresaw or reasonably should have foreseen that his employer might suffer an economic harm as a result of the breach," <u>United States v. Vinyard</u>, 266 F.3d 320, 327 (4th Cir. 2001), he has not pursued that claim on appeal. In his opening brief, the only defective performance claimed by Mauney is his counsel's failure to raise <u>Neder</u> on direct appeal. Accordingly, we do not address whether Mauney's counsel performed deficiently by failing to object to or appeal from the district court's lack of a precise definition of "honest services," or whether Mauney was prejudiced thereby.

13

Mauney was not prejudiced by the alleged failing of his appellate counsel, we affirm.

### III.

Because Mauney's appeal would have been unsuccessful even if his attorney had challenged Mauney's indictment and jury instructions under Neder, Mauney was not prejudiced by the deficient performance of which he complains in this appeal. Accordingly, we affirm the district court's denial of Mauney's § 2255 motion.

AFFIRMED

14