**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-5011**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

JAMES JEFFREY DUNCAN,

                    Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Fox, Senior District Judge.  (7:06-cr-00079-F)

Submitted:  October 22, 2008         Decided:  June 19, 2009

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Thomas P. McNamara, Federal Public Defender, Stephen C. Gordon, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant.  George E. B. Holding, United States Attorney, Anne M. Hayes, Jason H. Cowley, Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

James Jeffrey Duncan challenges his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (2000). Duncan argues on appeal that the district court committed plain error by admitting evidence at trial that he located the firearm and turned it over to state officials because those actions, taken pursuant to a domestic violence protective order, violated his Fifth Amendment privilege against self-incrimination.

Because no objection was made to the admission of the evidence during trial, we review the claim for plain error. Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993). Duncan thus must show: (1) there was error; (2) the error was plain; and (3) the error affected his substantial rights. Id. at 732-34. "'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'" Id. at 734. "At a minimum, a court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." Id. When the conditions in Rule 52(b) are satisfied, we may exercise our discretion to notice the error only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 736 (internal quotation marks omitted). "Central to this inquiry is a determination of whether, based on the record in its entirety, the proceedings against the accused resulted in a fair and reliable

2

determination of guilt." United States v. Cedelle, 89 F.3d 181, 186 (4th Cir. 1996).

The Self-Incrimination Clause of the Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V, cl. 3. "[T]he privilege protects a person only against being incriminated by his own compelled testimonial communications." Doe v. United States, 487 U.S. 201, 207 (1988) (internal quotation and citations omitted). Although the privilege is most often applied to compelled statements, it also "applies to acts that imply assertions of fact" that are testimonial in nature. Id. at 209. "The difficult question whether a compelled communication is testimonial for purposes of applying the Fifth Amendment often depends on the facts and circumstances of the particular case." Id. at 214-15 (citation omitted). A compelled action is nontestimonial if it is not compelled for the purpose of obtaining knowledge that the person taking the action might have. See id. at 217 (citation omitted).

"[I]n the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself." Minnesota v. Murphy, 465 U.S. 420, 427 (1984) (internal quotation and citation omitted). "[A]n individual may lose the benefit of the privilege without making a knowing and intelligent waiver."

3

<u>Id.</u> at 428 (internal quotation and citation omitted). Under a well-known exception, courts must exclude "incriminating statements obtained during custodial interrogation unless the suspect fails to claim the Fifth Amendment privilege after being suitably warned of his right to remain silent and of the consequences of his failure to assert it." <u>Id.</u> at 430 (citing <u>Miranda v. Arizona</u>, 384 U.S. 436, 467-69, 475-77 (1966)). The privilege also need not be claimed when the government seeks to induce a person, either expressly or by implication, "to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions capable of forcing the self-incrimination which the Amendment forbids." <u>Murphy</u>, 465 U.S. at 434 (internal quotation and citation omitted). The person must have been "deterred from claiming the privilege by a reasonably perceived threat of [sanctions]." <u>Id.</u> at 439.

In this case, Duncan's production of the gun is nontestimonial, as no evidence suggests he was compelled to produce it for the purpose of revealing his knowledge or admission that he possessed a firearm. Nor were Duncan's actions "compelled" because Duncan never claimed the Fifth Amendment privilege in response to the domestic violence protective order directing him to turn over a firearm to state officials, and no evidence suggests the Government sought to induce forfeiture of the privilege by threatening sanctions through service of the protective order.

4

Duncan was never arrested or otherwise subjected to custodial interrogation in connection with the protective order. The protective order stated that Duncan could be imprisoned for up to thirty months if he failed to comply with the order by turning over a firearm. However, it does not appear that the state intended to induce Duncan to incriminate himself by issuing the protective order or that Duncan was deterred from claiming the privilege against self-incrimination by the sanctions described in the order. The ostensible purpose of the order was to protect the person whose complaint prompted the order from domestic violence, and Duncan appears to have been unaware that he would incriminate himself by admitting that he possessed a firearm. In fact, Duncan disclaimed possession of the firearm or knowledge of its whereabouts when he was served with the protective order, but helped law enforcement officers search his residence for the firearm when he was served with the order. Duncan also disclaimed ownership or possession of the firearm when he testified on his own behalf at trial. Because the admission of evidence that Duncan located the firearm and turned it over to state officials did not clearly violate his Fifth Amendment privilege against self-incrimination under current law, its admission did not constitute plain error.

For the reasons stated above, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the

materials before the court and argument would not aid the decisional process.

                                                                  <u>AFFIRMED</u>