UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 07-4844(L)
(3:06-cr-01011-CMC)

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JONATHAN GIANNONE,

Defendant - Appellant.

O R D E R

The court amends its opinion filed January 7, 2010, as follows:

On page 2, attorney information section, the name "Drummond C. Smith, LAW OFFICES OF THOMAS F. LIOTTI, Garden City, New York, for Appellant" is added at line 4.

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-4844**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JONATHAN GIANNONE,

        Defendant - Appellant.

**No. 08-5020**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JONATHAN GIANNONE,

        Defendant - Appellant.

**No. 08-8386**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JONATHAN GIANNONE,

Defendant - Appellant.

---

Appeals from the United States District Court for the District of South Carolina, at Columbia.   Cameron McGowan Currie, District Judge.  (3:06-cr-01011-CMC)

---

Argued:  December 2, 2009                Decided:  January 7, 2010

---

Before NIEMEYER and AGEE, Circuit Judges, and John Preston BAILEY, Chief United States District Judge for the Northern District of West Virginia, sitting by designation.

---

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

**ARGUED:** Thomas F. Liotti, LAW OFFICES OF THOMAS F. LIOTTI, Garden City, New York, for Appellant.  Dean A. Eichelberger, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:** Drummond C. Smith, LAW OFFICES OF THOMAS F. LIOTTI, Garden City, New York, for Appellant.  W. Walter Wilkins, United States Attorney, Robert F. Daley, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Jonathan Giannone of three counts of wire fraud, in violation of 18 U.S.C. § 1343, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. It found that during May and June 2005, Giannone transmitted over the Internet 8 stolen account numbers of Bank of America debit cards as samples of what he had for sale to a confidential informant and 21 stolen account numbers, along with the names of 11 account holders, of Bank of America debit cards in furtherance of an actual sale to the confidential informant. The district court sentenced Giannone to 65 months' imprisonment -- 41 months on the wire fraud counts and 24 months to run consecutively on the aggravated identity theft counts.

On appeal, Giannone raises numerous errors relating to his convictions and sentence. For the reasons that follow, we affirm his convictions, but vacate his sentence and remand for resentencing.

I

The United States Secret Service conducted an online undercover investigation from its offices in Columbia, South Carolina, known as "Operation Anglerphish," which was designed to identify persons using the Internet to commit identity theft, credit card fraud, fraud, and related crimes. A target of this

3

investigation was an online community that trafficked in personal information and engaged in other criminal activities over the Internet. After Brett Shannon Johnson was arrested in Charleston County, South Carolina, for defrauding sellers on the Internet, he agreed to cooperate in the investigation as a confidential informant. In cooperation with the Secret Service, Johnson operated under his online user name "Gollumfun" while the Secret Service recorded his chats with transcripts of keystrokes and real-time video of his computer screen.

Several online chats occurred in which Pit Boss 2600 and CIA INTEL, online user names used interchangeably, contacted Johnson, who was a well-known and skilled member of the community trafficking in personal information. The person behind the names Pit Boss 2600 and CIA INTEL offered to sell Johnson some "seriously good dumps," referring to the data encoded on the magnetic strip on the back of a credit or debit card. That person then sent Johnson over various Internet transmissions eight account numbers for Bank of America debit cards, along with the names of the account owners, as samples of what he had for sale. While all of these accounts were inactive, the person indicated that he could sell Johnson more numbers in the future.

On June 4, 2005, the person behind Pit Boss 2600 sold Johnson 21 debit card numbers for $600. The person requested

4

that the $600 be deposited in a Bank of America checking account, and two days later, the person transferred 21 Bank of America account numbers to Johnson, as well as the names of 11 of the account holders. After the transfer, undercover agents deposited $600 into the bank account, from which the defendant in this case, Giannone, withdrew $500. Determining that Giannone was Pit Boss 2600 and CIA INTEL, the Secret Service arrested Giannone in New York and took him to South Carolina, where he was tried and convicted of five counts, three for wire fraud and two for aggravated identity theft.

The Secret Service was able to identify Giannone as the individual using the Pit Boss 2600 and CIA INTEL online user names based on his own e-mails, as well as external evidence. Two witnesses who knew Giannone testified that he used the Pit Boss 2600 name when chatting. But more significantly, Pit Boss 2600 made statements online to Johnson that his "legit" American Express card number ended with 1001 and that his account had been upgraded from gold to platinum status. This number and status corresponded to Giannone's actual American Express account. In chats, Pit Boss 2600 and CIA INTEL also referred to various travels throughout the United States, often for the purpose of executing scams. Bank records and flight records subpoenaed by the Secret Service demonstrated that Giannone had actually made the trips referred to by Pit Boss 2600 and CIA

5

INTEL. The government also demonstrated that Pit Boss 2600 and CIA INTEL were the same person with evidence that the two identities were used interchangeably in conversations with Johnson. Moreover, CIA INTEL indicated during a chat that he was also Pit Boss 2600.

In sentencing Giannone, the district court applied an intended loss figure in the amount of $132,327.17 to determine Giannone's offense level, applying U.S.S.G. § 2B1.1(b)(1). The court also applied a two-level sentencing enhancement on the wire fraud counts pursuant to U.S.S.G. § 2B1.1(b)(10)(B) because the offenses involved the trafficking of unauthorized access devices, i.e., the account numbers.

This appeal followed.

II

For his most substantial argument, Giannone contends that the district court gave an erroneous instruction to the jury on the meaning of "knowingly" in 18 U.S.C. § 1028A, the aggravated identity theft statute. In Flores-Figueroa v. United States, 129 S. Ct. 1886 (2009), which was decided after the jury was instructed in this case, the Supreme Court held that to convict a defendant under § 1028A, the government had to prove that the defendant knew that the "'means of identification' he or she unlawfully transferred, possessed, or used, in fact, belonged to

'another person.'"  Id. at 1888 (emphasis added).  At trial, however, the district court instructed the jury that a defendant need not know that the means of identification in fact belonged to another person, which was consistent with then-existing Fourth Circuit law.  See United States v. Montejo, 442 F.3d 213, 215-17 (4th Cir. 2006).  Because Giannone did not, understandably, object to the instruction, our review is for plain error under Federal Rule of Criminal Procedure 52(b).

While the government concedes that the failure to give an instruction consistent with Flores-Figueroa was plain error that affected Giannone's substantial rights, it urges that we not take notice of the error because allowing the conviction to stand will not "seriously affect the fairness, integrity, or public reputation of judicial proceedings."  It argues that the proceedings overwhelmingly demonstrated that Giannone knew that the means of identification he sold to Johnson belonged to other people.  See Johnson v. United States, 520 U.S. 461, 469-70 (1997) (citing United States v. Olano, 507 U.S. 725, 732 (1993)) (declining to notice plain error because of clear evidence of guilt); United States v. Cedelle, 89 F.3d 181, 186 (4th Cir. 1996) (same).

We agree and decline to notice the error.  The record demonstrates that the entire purpose of the transaction between Giannone and Johnson was to traffic in the identities of real

7

people.  Indeed, Giannone provided the names of 11 of the 21 account holders whose accounts he sold to Johnson for $600, demonstrating that he knew that the account numbers were associated with actual people.  Moreover, Giannone stipulated at trial that if any of the account holders referred to in the indictment were called to testify, they would state that the accounts were theirs and were transmitted without authorization.

The situation here is not unlike that in Cedelle where we declined to notice plain error when overwhelming evidence indicated that a defendant knew he was receiving depictions of actual minors engaged in sexually explicit conduct, even though the jury was not instructed on the required knowledge element. Cedelle, 89 F.3d at 185-86.  The evidence here clearly demonstrates that Giannone not only trafficked in the means of identification of others but knew that the means of identification belonged to real persons.

### III

Giannone also argues -- correctly -- that the district court erred by imposing a two-level sentencing enhancement under U.S.S.G. § 2B1.1(b)(10), calling for an enhancement when a crime involves the trafficking of an unauthorized access device -- in this case the bank debit cards.

8

The application notes to the Guidelines governing aggravated identity theft state that this enhancement should not apply to a defendant convicted of aggravated identity theft when the defendant is also convicted of the offense underlying the aggravated identity offense, in this case the wire fraud. See U.S.S.G. § 2B1.6, App. Note 2. The reason is obvious. The aggravated identity theft charge itself imposes an additional, consecutive two-year sentence for the unauthorized use or transfer of the account numbers, and therefore the enhancement in § 2B1.1(b)(10) would amount to double counting.

Even though Giannone did not object to the enhancement below, we take notice of the plain error, vacate Giannone's sentence, and remand for resentencing.

IV

Giannone's other arguments on appeal do not merit significant discussion. First, he contends that the district court abused its discretion by denying his pretrial motion to transfer this case under Federal Rule of Criminal Procedure Rule 21(b) to the Eastern District of New York, where he lives. While we have already denied Giannone's petition for a writ of mandamus challenging the district court's denial of his transfer motion, we again conclude the district court did not abuse its discretion. While Giannone does live in New York and witnesses

9

are located there, the violations here occurred over the Internet between New York and South Carolina, where there are also witnesses.

Giannone also contends that the district court erred by denying his post-trial motion for a new trial based on his claim that the government withheld exculpatory impeaching information in violation of Brady and that newly discovered evidence demonstrated his innocence. In a pre-trial motion to dismiss, Giannone submitted a chat transcript, which he then alleged demonstrated that he was not the individual associated with the screen names Pit Boss 2600 and CIA INTEL. After his conviction, he admitted to the government that he had fabricated the chat transcript, and his counsel (despite relying on the transcript in briefs before this Court) reiterated that concession at oral argument. Prior to this admission, however, the government had prepared a video demonstration for trial to show the jury how an online chat transcript could be fabricated. The trial court ultimately did not permit the government to introduce the demonstration into evidence, but Giannone claimed in his post-trial motion that the evidence was Brady material inasmuch as it could demonstrate that the evidence of the transcripts between himself and Johnson were similarly fabricated. This argument is baseless because the demonstration was not exculpatory but instead would only demonstrate that Giannone had committed a

10

fraud on the court. It would do nothing to refute the considerable real-life testimony corroborating the chats between Johnson and Giannone.

Giannone also bases his Brady argument in part on a March 1, 2007 letter written by Johnson to the district judge, which contained descriptions of Johnson's misdeeds, Secret Service misconduct, and Johnson's drug addiction. Giannone claims that, although the letter was written during trial, he never received the letter during trial and thus was unable to use it because the government and the court suppressed the letter until after trial. The record establishes, however, that the letter did not arrive at the court until March 13, 2007, which was after the trial had been completed, and that Giannone was promptly given the letter.

Giannone's other claimed Brady violations about withholding his police record, grand jury testimony, and other miscellaneous post-trial matters are no more persuasive. We conclude that Giannone simply has not demonstrated any Brady violation.

Next, Giannone argues that certain flight, credit card, and bank records were improperly admitted into evidence because they were not properly authenticated. He did not, however, object to the evidence on this basis, and therefore any review is for plain error. There clearly was no plain error as, contrary to

Giannone's contentions on appeal, he expressly consented to the admissibility of the exhibits during the course of trial.

Next, Giannone contends that the district court abused its discretion in allowing a Secret Service agent to testify about his experiences with airport security without being qualified as an expert witness. This argument is frivolous. The agent simply testified that in order to fly on an airline, one must show identification that matches one's airline ticket. This was a factual matter, not a matter for expert testimony.

Giannone next claims that the evidence was insufficient to show that he knowingly used the means of identification of another person, as required by 18 U.S.C. § 1028A. The evidence refuting this argument has already been discussed in connection with his challenge to the jury instruction on § 1028A, and, based on that evidence, we reject his argument that the evidence was insufficient to support a conviction.

Next, Giannone contends that the district court erred by using the total balance of the 21 debit card accounts sold, i.e., $132,327.17, as the intended loss for purposes of sentencing. He notes that the amount actually realized in using the debit cards amounted to only $12,546.92. This argument, however, overlooks that the Sentencing Guidelines require that the greater of the actual or intended loss be applied in

12

computing an offense level.  See U.S.S.G. § 2B1.1, App. Note 3(A).

Finally, Giannone argues that based on his cooperation following conviction, he was entitled to a motion by the government for a downward departure pursuant to U.S.S.G. § 5K1.1.  We have held, however, that we may only review "a prosecutor's decision not to move for departure if the refusal is based on an unconstitutional motive, such as race or religion, or is not rationally related to permissible government objective."  United States v. LeRose, 219 F.3d 335, 341-42 (4th Cir. 2000).  Because no improper motive has been demonstrated, we will not review the prosecutor's exercise of discretion.

In sum, we affirm Giannone's convictions and vacate his sentence, remanding for resentencing without the two-level enhancement under U.S.S.G. § 2B1.1(b)(10).

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED